Cantor *v.* Metropolitan L. Ins. Co., Appellant.

2

Argued October 10, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige and Parker, JJ.

*Arthur G. Dickson,* and with him *Leroy A. Lincoln,* for appellant, cited: Giovanni Pannone v. John Hancock Mutual Life Insurance Company, 157 Atl. Rep. 876; Smith v. Supreme Lodge, 61 Pacific Reporter 416; Maresh v. Peoria Life Insurance Company, 133 Kansas 191.

*Michael A. Foley,* and with him *Henry I. Koplin,* for appellee, cited: Burkhard v. Travelers' Ins. Co., 102 Pa. 262.

Opinion by Keller, J., January 25, 1933:

The plaintiff had a life insurance policy in the defendant company which contained a clause waiving payment of premiums and providing for the payment of monthly benefits to the insured on his furnishing due proof to the company that he had become totally and permanently disabled and would for his lifetime be unable to perform any work or engage in any busi-

ness for compensation or profit. The relevant provisions of the policy are printed in the margin.[1]

In November, 1922, plaintiff gave notice to the company that he was totally and permanently disabled within the meaning of the policy, and, after receipt of proofs submitted and investigation, the company paid him disability benefits of $100 a month from May, 1923 up to and including December, 1931, and waived the payment by him of premiums on the policy during that period. During January, 1932 it refused to pay him any further benefits, on the ground that he was not totally disabled. He offered to submit himself for examination to the defendant's medical examiner, but was refused. He brought this action for the two months benefits payable January 14 and February 14, 1932, respectively. The case was tried in the municipal court before a judge without a jury. From the judgment for the plaintiff, based on the finding of the judge in his favor, the defendant has appealed.

Dr. Leavitt, who attended the plaintiff from the inception of the disease, testified that he was suffering from progressive spinal muscular atrophy, which, he

---

[1] "11. Provision for Total and Permanent Disability Benefits: If while this Policy is in full force and effect, and before default in the payment of any premium, the Company receives due proof that the insured, as the result of causes originating after the delivery of this Policy, has become totally and permanently disabled and will for lifetime be unable to perform any work or engage in any business for compensation or profit, the Company will allow the following benefits: ...... [$100 per month, and waiver of premiums during disability]."

"Notwithstanding proof of disability may have been accepted by the Company as satisfactory, the Insured shall at any time, but not oftener than once a year, on demand from the Company, furnish due proof of the continuance of such disability and permit examination by a medical examiner of the Company; and if the insured shall fail to furnish such proof, or if the Insured is able to perform any work or engage in any business whatsoever for compensation or profit, no further premiums will be waived or allowed to accumulate as an indebtedness against the Policy, nor will any further Monthly Annuity payments be made."

said, "is a condition affecting the motor system or central nervous system that produces paralysis and wasting, progressive over a period of years. It is an incurable disease, progressive in its degree, and in nearly all cases results in the death of the individual." He further testified that "there is no medicine known that has any effect in stopping the progress of the disease;" and that "his [plaintiff's] condition has gotten progressively and steadily worse;" and again, "When I saw him in 1922 it—he was complaining of weakness in the entire upper extremity and I have seen him on an average of once every four months since that time and I should say the left upper extremity is now practically paralyzed, although he can now move it around a little bit but for no useful purpose, not only have the muscles become atrophied in the upper arm but the entire shoulder girdle has become atrophied with fibrillations and twitching of the muscles which is an indication of the death of the muscles due to the death of the spinal cord. That condition is spreading over the entire upper extremity involving the right arm so that it now shows a wasting of the hand and forearm and the group of muscles to the right hand. He has fairly good power in the shoulder group of muscles but there also exists some wasting, atrophy in the left lower extremity and there is a wasting and loss of power in the left extremity and he complains of pain in the spine in the neck, and the back region and the cervical-dorsal region that is steadily progressing, becoming very pronounced, and arthritis which prevents movement of the spine forward and back and rotation of the head to either side to any degree. I sent him to the Graduate Hospital of the University some few months ago to have an X-ray of the spine, because that is evidently becoming very pronounced, to see whether there was any malignancy, but the X-ray showed no malignancy, just an arthritis ...... This man is in an absolutely incurable condition ...... I

would say he is unable to engage in any useful occupation which has been his customary occupation." Q. "Is he able to engage in any useful occupation for compensation or profit?" A. "I would say no." As to claimant's disability being a medical question, see Runkle v. U. S., 42 Fed. (2d) 804.

The doctor admitted that the plaintiff's mentality was not affected; that he could walk for short distances; that he might be able to sit in his drug store and give directions, or pick up a package and hand it to a customer and receive the money for it, or give a salesman an order; but said that he could not compound a prescription or conduct the business.

The defendant claims it was entitled to judgment in its favor because of these admissions and because the plaintiff himself admitted that he was the "manager" of the drug store which was conducted under his name. He was a registered pharmacist, by profession, before he became ill.

A careful reading of the evidence satisfies us, as it did the court below, that the plaintiff was not the "manager" of the store in the way that term is usually employed; that his explanation of his activities qualified it so as to cover only a few desultory acts in connection with the actual management of the store by his wife and son, the latter of whom was a registered apprentice. Such prescriptions as the latter could not fill were sent to Benjamin Zipin, a cousin, who was a registered pharmacist at 13th and Jefferson Streets. The plaintiff's bedroom was directly over the store room; he lay there a good deal of the time, and when downstairs sat outside the store, or in the store room, where he occasionally may have handed a customer a small purchase, or received the money for it, or signed a delivery receipt. It was not his usual practice. The actual work of conducting the store, buying goods, paying for them, making sales and receiving the money was done principally by his wife and son or sons. It

would have been impossible for him to have taken, held or performed the job of conducting, managing, or even clerking or holding any paid position in this or any other store.

With these facts in mind, do the provisions of the policy before referred to require a directed finding for the defendant, or was the matter a question of fact for the judge sitting as a jury? We think the latter.

The answer depends on the construction to be given the term "totally disabled," as it is used in the policy. If it requires absolute physical and mental helplessness, the judgment of the court below should be reversed; but if it is used relatively rather than literally, and means such disability as will prevent the insured from engaging in and carrying on any gainful business or occupation and himself performing a substantial and essential part of the work incident thereto, then it would be for a jury—or in a trial by a judge without a jury, for the judge—to decide, unless the evidence was clear and decisive one way or the other, whether the insured was totally disabled within the terms of the policy.

In Losnecki v. Mutual Life Insurance Co. of N. Y., 106 Pa. Superior Ct. 259, 161 Atl. 434, we had occasion to construe the word "permanently" as used in the phrase "totally and permanently disabled" in a similar policy of insurance, and we held that it was not used in the sense of absolute perpetuity, but relatively in contradistinction from "temporary" or "transient." We think the policy, considering the whole clause involved, requires a similar construction of the word "totally"; that the term "totally disabled" is not used in a sense of absolute helplessness, mentally and physically, but rather, as was expressed by the Supreme Court of Rhode Island, in Pannone v. John Hancock Mutual Life Ins. Co., 157 Atl. 876, in construing a

similar policy: "Inability of the insured to do the greater portion, the substantial part, of his work or duty;" but that "inability to do some one thing or several things constituting a lesser portion of his work is not total disability" (p. 878).

That case which was chiefly relied upon by appellant in its argument was very different in its facts from this one. There, the insured who was the proprietor of a meat and grocery store had a swelling of the hands which for some months—he had fully recovered at the time of the trial—prevented his handling frozen meats, but his activities in and around his store were not otherwise circumscribed. He visited it whenever he went out walking, and generally supervised the business, especially the financial part of it. The cash receipts were turned over to him each night and he himself deposited them in his checking account in bank. The court said his position was much the same as the plaintiff in Coad v. Travelers' Ins. Co., 61 Neb. 563, 567, 85 N. W. 558, 559, where it was said: "To sum up, it appears from the record that plaintiff's business matters were attended to, looked after and directed by him during the period for which a recovery is sought, much in the same manner, speaking generally, and substantially in all important particulars, as he was accustomed to do before the accident." The distinction between that sort of management and supervision and the desultory and occasional activities of this plaintiff is readily apparent.

In Maresh v. Peoria Life Ins. Co., 133 Kans. 191, 299 Pac. 934, also cited by appellant, the insured who had worked at farm labor was permitted to recover as totally disabled, where it was proved that he could not perform the usual and ordinary activities which farming requires, although "he helps his mother with housework, washes and dries dishes, and brings in some wood and some water. He works in the garden

a little. After a half hour's work he is obliged to quit for the day. He could handle a peck of corn to feed two or three hogs and a few chickens. Sometimes he drives a Buick car, takes his sister to school and gets groceries in town. He does this with some difficulty and on some days he cannot do it." The court said: "While this man can do a number of things, chiefly petty, he cannot work or conduct business for compensation or profit and never will be able to do so."

In Consona v. Coulborn & Co., 104 Pa. Superior Ct. 170, a workmen's compensation case, where a structural steel worker was badly hurt in an accident, and the question was whether he continued to be "totally disabled," we said, speaking through our Brother BALDRIGE: "The evidence indicates that the claimant can, at irregular intervals, do some light work, but of a very limited character. His incapacity is such that it would not be practicable to expect that he could hold a job. If he were able, uninterruptedly, to do light work it might be presumed that work of that nature would be available ...... This man is unable to work inside and his physical limitations render him incapable of steadily working on the outside;" and we allowed compensation for total disability even though the claimant did some desultory and occasional work in running a chicken farm.

A literal construction of the words 'totally disabled' as used in disability and accident insurance policies has been rejected by the courts of many of the states, e. g. Georgia (Cato v. Aetna Life Ins. Co., 164 Ga. 392, 138 S. E. 787, 790); Arkansas (Great Eastern Casualty Co. v. Robins, 111 Ark. 607, 164 S. W. 750, 751, where the insured was a publisher); Kentucky (Fidelity & Casualty Co. v. Bynum, 221 Ky. 450, 298 S. W. 1080, 1082, where they were defined as, 'incapacitated from performing any substantial part of his ordinary duties, though still able to perform a few minor duties and

be present at his place of business'); Vermont (Clarke v. Travelers Ins. Co., 94 Vt. 383, 111 Atl. 449); South Carolina (Brown v. Missouri State Life Ins. Co., 136 S. C. 90, 134 S. E. 224, 225, where it was held the term "does not mean absolute helplessness or loss of reason, but an inability to do substantially all of material acts necessary to prosecution of insured's business or occupation in customary and usual manner); Oklahoma (Ozark Mut. Life Assn. v. Winchester, 116 Okla. 116, 243 Pac. 735, 736, where it was held that the claim was not affected by a few occasional and trivial acts relating to the business); Illinois (Davis v. Midland Casualty Co., 190 Ill. App. 338, 340,—insured need not be helpless and can recover although he is able to give instructions to others).

It is not necessary or desirable that we should attempt to define exactly what is included in the term 'totally disabled.' It is sufficient for us to decide that the facts in this case are not so clear and convincing as to require us to hold as matter of law that the plaintiff is not 'totally disabled' within the language of the policy; that the few trivial and desultory acts which he performed in and about the drug store conducted in his name were not such as to compel us to rule that he is able to perform work or engage in business for compensation or profit within the meaning of the policy; that it was rather a question of fact for the trier of fact to decide, and he having decided that the plaintiff was, at the time involved in the suit, 'totally disabled,' and the permanence of his disability being unquestioned, we will not disturb the judgment.

The assignments of error are overruled and the judgment is affirmed.