Amrovcik *v.* Metropolitan Life Insurance Company, Appellant.

Argued April 15, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John M. Bennett,* of *Weimer & Bennett,* for appellant.

*Samuel R. DiFrancesco,* for appellee.

OPINION BY RHODES, J., October 2, 1935:

The plaintiff brought this action to recover permanent disability benefits allegedly payable to him under the permanent disability riders attached to two policies of insurance issued by the defendant company to him. The relevant portions of the policies, which are identical, are as follows: "TOTAL AND PERMANENT DISABILITY PROVISION ...... The Metropolitan Life Insurance Company ...... Doth Hereby Agree, that if while the above numbered Policy is in full force and effect, and before default in the payment of any

premium, the Company receives due proof that the Insured, as the result of injury or disease occurring and originating after the issuance of this Policy, has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit, the Company will allow the following benefits: (a) Provided said disability occur before the Insured attains sixty years of age, but not otherwise, the Company, commencing with the anniversary of the Policy next following receipt of such proof, will waive payment of each premium becoming due during such disability, and, in addition, commencing six months from the receipt of such proof, will pay each month, during the continuance of such disability, to the Insured ...... a Monthly Annuity of $10 for each $500 of original insurance under the Policy ...... (b) ...... Notwithstanding proof of disability may have been accepted by the Company as satisfactory, the Insured shall at any time, but not oftener than once a year, on demand from the Company, furnish due proof of the continuance of such disability; and if the Insured shall fail to furnish such proof, or if the Insured is able to perform any work or engage in any business whatsoever for compensation or profit, no further premiums will be waived or allowed to accumulate as an indebtedness against the Policy nor will any further Monthly Annuity payments be made."

The plaintiff recovered a verdict and judgment in the court below. The defendant company appeals, and assigns as error the lower court's refusal to enter judgment n. o. v. Appellant raises two questions under this assignment: (1) That the plaintiff failed to meet the burden of proof that he was totally and permanently disabled, within the meaning of the policy, at the time of his notice to the defendant company; and (2) that, even though a total and permanent disability existed,

the defendant company did not receive due proof of such fact, as is required by the terms of the policy.

In order to recover under the provisions of the policies, the burden was on the plaintiff to prove that a total and permanent disability existed at the time of notice or due proof to the defendant. Total and permanent disability must exist, and the defendant must receive or waive due proof thereof, before it is liable thereunder. As stated by Judge JAMES, in the case of Lucas v. John Hancock Mutual Life Insurance Co., 116 Pa. Superior Ct. 298, 301, 176 A. 514, 515: "It appears that under these provisions due proof of the disability then existing is a condition precedent to the payment, not for the disability that has existed, but for the disability then existing and which shall continue from the time that company has due proof of the existence of the disability."

The appellant contends that the plaintiff did not meet the burden of proof, because the evidence failed to show a total and permanent disability existing on November 21, 1930, or within approximately two months thereafter, which period covered the dates of the alleged notices to the company.

The plaintiff, forty-seven years of age, had been employed by the Bethlehem Steel Company as a rigger, for twenty-two years, which occupation involved climbing about steel construction work. He was illiterate, being unable to read or write either the English or his own native Slavonic language. The plaintiff's alleged disability consisted of fallen pedal arches of both feet, and arthritis. He called Dr. Zobel, who testified that he first examined the plaintiff on November 21, 1930, at which time he observed that the plaintiff had fallen arches, swollen feet, and walked with great difficulty. The doctor stated several times that, in his opinion, plaintiff was totally disabled on November 21, 1930, and that the arthritic condition was progressive since

that date. This witness admitted that the plaintiff's feet were the only parts of his body which he could not use, and said that he might be an executive, if he had the mental ability and training.

However, the words "total disability" as used in the policies do not mean that the insured must be absolutely helpless, mentally and physically. Cantor v. Metropolitan L. Ins. Co., 108 Pa. Superior Ct. 1, 164 A. 145; Janney v. Scranton Life Insurance Company, 315 Pa. 200, 173 A. 819. In the recent case of Cooper v. Metropolitan Life Insurance Company, 317 Pa. 405, 408, 177 A. 43, 44, the Supreme Court, in an opinion by Mr. Justice KEPHART, said: "While the words of the policy must receive reasonable construction and, literally interpreted, the words total disability to engage 'in any and every occupation of employment for wage or profit' would require that an insured be a helpless invalid before he would be entitled to benefits under the policy, this cannot be what the parties intended. It is rare that any man is incapacitated from doing some work; many a blind man weaves baskets; a man with both legs and one arm off can sit in a doorway and sell lead pencils, or act as a telegraph operator; but it cannot well be argued that either is not totally disabled. A reasonable interpretation of the words of the policy is, that the total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing."

Even though there were some inconsistencies and contradictions in the testimony of Dr. Zobel, he nevertheless definitely testified that the plaintiff had a total disability or infirmity of the feet, and was suffering from a progressive type of hypertrophic arthritis since November 21, 1930. The testimony on behalf of the plaintiff was sufficient to warrant the court in submitting to

the jury the question of his total and permanent disability as of November 21, 1930. The establishment of the plaintiff's total and permanent disability did not depend entirely upon expert testimony. Tibbetts v. Prudential Insurance Co. of America, 313 Pa. 310, 169 A. 382. The plaintiff himself was a competent witness (see Kramer v. Travelers Insurance Co., 111 Pa. Superior Ct. 367, 170 A. 700; Tibbetts v. Prudential Insurance Co. of America, supra), and so were his wife and daughter (see Losnecki v. Mutual L. Ins. Co. of N. Y., 106 Pa. Superior Ct. 259, 161 A. 434). On the trial, the plaintiff testified that he began to have trouble with his feet in January or March of 1930; that he stopped work entirely in November, 1930; that he was confined to his bed for approximately three months; that he had continuous pain and could not work; and that he has been unable to perform any work since November, 1930, to the time of the trial. He was corroborated by his wife and daughter, who also described the outward manifestations of his disability. Dr. Carney testified that he examined the plaintiff in July, 1932; that, in his opinion, the plaintiff was totally and permanently disabled from performing any labor that required the use of his feet; and that the plaintiff's condition came from arthritis. Dr. Cush testified that he had examined the plaintiff; that the plaintiff would be totally and permanently disabled from pursuing any occupation that required prolonged standing or walking; that he was suffering from arthritis; and that his condition would become progressively worse.

The question of total and permanent disability of the plaintiff in this case was for the jury, and not for the court. The appellant's contention,—that proof of total and permanent disability, resulting from chronic hypertrophic arthritis of the feet, is a matter of medical science, which must be established by a medical expert, and that there was no such evidence in this case,—is

without merit. On cross-examination of Dr. Zobel, the defendant's counsel asked the following question: "Q. Let me put the question in this way, do you say that on November 21, 1930 and continuing since George Amrovcik, the plaintiff here, has been totally and permanently disabled so as to be unable at any time during that period to perform any work or engage in any business for compensation or profit?" The witness answered: "If his livelihood depends entirely upon his feet I would say yes." Dr. Zobel also testified as follows: "Q. And many people have arthritis in their feet too, don't they? A. Yes. Q. And keep on working? A. I will hold off on that answer on this type of arthritis, it is progressive, and I couldn't say that he would work with that type of arthritis. Q. You mean it is getting worse right along? A. Yes. Q. What is the evidence of arthritis? A. It is in the articulation between the joints, there is a bone formation tending toward ankylosis. Q. Hardening or stiffening of the joints? A. Yes. Q. The stiffening of the bones? A. That's right. Q. Then the joints eventually close and exert pressure on the nerves? A. Yes. Q. And that's what causes the pain? A. Yes. Q. You say this has been progressive? A. A progressive condition. Q. Since November 21, 1930? A. Yes." His testimony, with that of the plaintiff, his wife and daughter, was sufficient to take the case to the jury.

The evidence shows that the plaintiff was unable to read or write, and that he was a rigger engaged in steel construction work. There was ample evidence from which the jury could conclude that the plaintiff's livelihood depended entirely upon the use of his feet, and that the affliction from which he suffered caused a total and permanent disability existing from November 21, 1930.

Appellant raises another question to the effect that, even though a total and permanent disability existed,

there was not a compliance with the terms of the policy requiring due proof of such disability, from the insured, as a condition precedent to the plaintiff's right to recover. The testimony shows that the plaintiff sent his wife and daughter to the office of Thomas E. Prout, the district manager of the defendant company in that district, about a week after November 21, 1930; that they informed Mr. Prout the plaintiff was disabled, and described his physical condition to him. Both testified that Mr. Prout told them that the disability was not covered by the terms of the policies, and that the plaintiff was not entitled to any benefits thereunder. They further testified that the policies were submitted to Mr. Prout on this visit, and blank forms of proof requested; that they again called upon him at the direction of the plaintiff, about a month later, and made a similar demand for forms upon which to submit proof of disability; and that, on the second visit, Mr. Prout again denied that there was any liability on the part of the defendant company. The third time they called, Mr. Prout was not in. Mr. Prout was a district manager of the defendant company in that county; and no question has been raised as to his authority to act for and on behalf of the defendant.

Mr. Prout, called as a witness for the defendant, admitted that he had seen the wife and daughter of the plaintiff, but did not remember when he saw them; nor did he recall what was said when he did see them. However, the witness testified that he had no recollection of seeing them in the office in November, 1930.

We are of the opinion that the evidence shows that the plaintiff acted properly, under the circumstances, and did all that could reasonably be expected of him. Mr. Prout was the proper person to whom proofs of disability could be submitted. The plaintiff was illiterate, being unable to read or write. Sending his wife and daughter to the principal representative of the de-

fendant company in that district was the natural and logical thing for him to do. Plaintiff's failure to file additional, formal, or technical proofs was plainly due to denial, by its agent, of liability on the part of the defendant, and to his refusal or neglect to furnish blank forms as requested.

The appellant cannot now take advantage of the plaintiff's failure to file what it may call "due proof," when such failure was caused directly by the statements and actions of appellant's authorized agent. "It is a well settled rule of law that a party to a contract cannot escape liability under his obligation on the ground that the other party has failed to perform a condition precedent to the establishment of such liability or to the maintenance of an action upon the contract, where he himself has caused that failure. As stated in Williston, Contracts, section 677, 'It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.' Thus, an insurer will not be permitted to take advantage of the failure of the insured to perform a condition precedent contained in the policy, where the insurer itself is the cause of the failure to perform the condition": Arlotte et al. v. National Liberty Insurance Company, 312 Pa. 442, 445, 167 A. 295, 296.

Moreover, waiver of formal or technical proofs may be inferred from a denial of appellant's liability on other grounds than failure to file such proofs. Where the insurer's representative "states that it will not pay any loss, what would be the use of filing a proof of loss? A policyholder need not do a vain thing, nor is he to be prejudiced for failure to observe a technicality, the performance of which would be useless": Fedas v. Insurance Company of the State of Pennsylvania, 300

Pa. 555, 560, 151 A. 285, 287. See Janney v. Scranton Life Insurance Company, supra.

The evidence supports the jury's conclusions.

The assignment of error is overruled, and the judgment of the court below is affirmed.