Becker *v.* Prudential Insurance Company of America, Appellant.

Argued October 6, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*A. Floyd Vosburg,* with him *A. A. Vosburg,* of *Vosburg & Vosburg,* and *Richard B. Sheridan,* for appellant.

*W. J. Fahey,* with him *C. B. Lenahan,* for appellee.

OPINION BY KELLER, P. J., December 11, 1936:

This appeal is without merit. It is concerned with an action of assumpsit on a life insurance policy, containing a provision for benefits to the insured in case, before he became sixty years of age, he should become totally and permanently disabled, either physically or mentally, to such an extent as to render him wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his lifetime.

Sometime after the policy was issued, and when the insured was about forty years of age, he notified the insurance company that he had become totally and permanently disabled physically within the provisions of the policy, and furnished proof satisfactory to the company of such total and permanent physical disability. Thereupon the company paid the insured the monthly income benefits and waived the payment of further premiums as provided in the policy. This continued from December, 1929 up to and including October, 1932, when the company refused to allow any further disability benefits. The insured, thereafter, in February 1933, brought this action and recovered a verdict and judgment. Defendant appealed.

(1) Defendant's first proposition is that there can be no recovery because plaintiff, after defendant ceased its monthly benefit payments, presented no proofs to the company of the continuance of his disability before bringing suit. The point is ruled against defendant by the provision of its own policy, as follows:

"Proof of Continuance of Disability.—Notwithstanding the acceptance by the Company of proof of total and permanent disability, the Insured upon demand by the Company from time to time, but not oftener than once a year after such disability has continued for two full years, for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish due proof that he (or she) actually continues in the state of disability defined above;..... In case of failure to furnish such proof, no further premiums shall be waived and no further monthly payments shall be made on account of such disability, but any insurance then remaining under this Policy shall be continued in force subject to the payment by the Insured of any premium or premiums, based on such insurance, the due date of which premium or premiums, as specified on the first page hereof, shall occur thereafter."

After the company has once recognized the insured's total and permanent disability, by acceptance of the insured's proof thereof and paying the benefits secured by the policy, the insured is not called upon to furnish proof of the continuance of his disability, except "upon demand of the Company." The defendant company made no demand upon the insured plaintiff that he furnish proof that he actually continued in the state of disability insured against. The insured was not required to furnish proof of the continuance of disability until demand for it was made upon him by the company. Stopping the payment of benefits did not amount to a demand for such proof. It shows rather that the company, without requiring additional proofs, had decided to refuse further benefits. After such refusal, formal proofs were no longer necessary: *Amrovcik v. Metropolitan Life Ins. Co.*, 119 Pa. Superior Ct. 176, 184, 180 A. 727.

(2) Defendant's second contention is that the plaintiff's physicians should not have been permitted to

testify that, in their opinion, he was totally and permanently disabled and unable to engage in any occupation or perform any work or labor for compensation of financial value. It has been the settled practice in this commonwealth, at least since the decision in *Wilt v. Vickers*, 8 Watts 227 (1839), to permit physicians to express their opinions as to the extent and permanence of a plaintiff's disability.[1] It does not, as appellant argues, permit the doctors to usurp the functions of the jury. The very point here argued was raised and decided adversely to appellant's contention in the case of *Cooper v. Metropolitan Life Ins. Co.*, 323 Pa. 295, 186 A. 125, where similar evidence of physicians was received (see pp. 126, 127) and Mr. Justice LINN, speaking for the Supreme Court, said: "Three assignments complain of physicians' opinions received in evidence......The jury had the plaintiff before them and heard from him about his education, prior employments, occupation at the time of the injury, the injury itself, and the resulting incapacity and the treatment to the date of trial. It is common knowledge that there are many ailments which laymen might not consider wholly or even partially incapacitating, but for which a physician would immediately insist upon partial or total inactivity and rest. The evidence shows that mere description of the knee injury would not sufficiently inform a lay jury to consider and determine intelligently

---

[1] See, inter alia, *Palmer v. Warren St. Ry. Co.*, 206 Pa. 574, 56 A. 49; *Goldstein v. East Fallowfield Twp.*, 43 Pa. Superior Ct. 158, 162; *Losnecki v. Mutual Life Ins. Co.*, 106 Pa. Superior Ct. 259, 264, 161 A. 434; *Cantor v. Metropolitan Life Ins. Co.*, 108 Pa. Superior Ct. 1, 4, 5, 164 A. 145; *Kramer v. Travelers Ins. Co.*, 111 Pa. Superior Ct. 367, 370, 170 A. 700; *Tibbetts v. Prudential Ins. Co.*, 313 Pa. 310, 313, 314, 169 A. 382; *Janney v. Scranton Life Insurance Co.*, 315 Pa. 200, 206, 173 A. 819; *Amrovcik v. Metropolitan Life Ins. Co.*, 119 Pa. Superior Ct. 176, 181, 180 A. 727; *Cooper v. Metropolitan Life Ins. Co.*, 323 Pa. 295, 186 A. 125, 126-129.

the questions at issue. It therefore became necessary to enlighten the jury by the opinions of the physicians who had treated and operated on the plaintiff, or were otherwise qualified by experience and observation. Necessity is the ground of admissibility of such evidence......We all agree that the record contains nothing that would justify this court in holding that the two physicians were not qualified to give their opinions or that the opinions given were not admissible. They would seem to have been peculiarly qualified by their professional treatment of the plaintiff to give opinions on the subject......The other objection, though not very definitely stated at the trial and now applicable to only one answer, is now made the basis for contending that the examination 'permitted the doctors to pass upon the ultimate question before the jury and to substitute their opinion for the conclusions of the jury, based upon all the testimony and the charge of the Court. Appellant's theory also is that these are subjects which do not require expert testimony but are matters upon which the jury are as well informed as the witnesses.' Both contentions must be rejected. The court and the jury remained free to deal with this evidence like any other. They were not bound by the opinions of the witnesses, who were not called to decide the ultimate fact. Their testimony, if believed, merely proved another fact—that in the light of their general experience and of their observation of plaintiff they had reached the conclusions announced. Those were facts to be considered with the other evidence; they might be rejected in whole or in part; the weight to be given them was for the jury. Certain federal cases dealing with war risk insurance are said to support the proposition that expert witnesses may not give opinions on the ultimate issue to be decided by the jury. If we understand appellant, it must be said that such opinions are received constantly in this commonwealth. For

example, in many eminent domain cases, the only question is the amount of compensation payable for land taken and almost always the proof is by opinion evidence; where the ultimate issue is sanity or insanity, opinion evidence is frequently all there is; other examples are common. Though the distinction is not always observed, it is necessary not to confuse cases admitting opinion evidence with the cases holding that such evidence will not be received where there is no necessity for it, as where the cause of action is otherwise susceptible of proof."

(3) By an oversight, the X-ray plates or photographs, which had been shown to the jury and explained to them by the physicians, were not formally offered in evidence until after the court had charged the jury, when, upon the matter being drawn to the court's attention, it permitted the oversight to be corrected and the plates to be received in evidence and taken out by the jury. We find no abuse of discretion on the part of the court in so doing.

(4) The policy in this case provided that the disability must be total, permanent and continuous. Under its special and rather unusual provisions there could be no recovery under the policy unless all three of these characteristics were present. It was entirely proper, therefore, for the plaintiff to prove his total and permanent disability not only from the time defendant stopped paying benefits up to the time of bringing suit; but also that it continued down to the time of trial; otherwise the defendant might have argued to the jury that while the disability might have been total, it had not been shown to be permanent and continuous.

The assignments of error are overruled and the judgment is affirmed.