## Milich *v.* Metropolitan Life Insurance Company, Appellant.

Argued April 24, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*David I. McAlister,* of *McAlister & Zelt,* with him *D. C. Jennings* and *Harry Cole Bates,* for appellant.

*G. I. Bloom,* of *Bloom & Bloom,* with him *Harry F. Moore* and *Wallace S. Gourley,* for appellee.

OPINION BY BALDRIGE, J., July 18, 1941:

The plaintiff brought two suits in assumpsit. Each action was based upon a policy of insurance issued to the plaintiff by the defendant, which contained a supplementary contract attached to and made part of the policy providing for certain payments to be made to the plaintiff in the event of his becoming, before the age of 60 years, totally and permanently disabled as the result of bodily injury or disease so as to prevent him "from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months." The premiums due thereon were paid up to and including the year 1936. The actions were tried together and verdicts were obtained by the

plaintiff. These appeals that followed after the entry of judgments will be disposed of in one opinion.

The defendant denies liability because (1) the plaintiff is not totally and permanently disabled within the meaning of the policy, and (2) he failed to furnish to the defendant due proof that he is prevented from performing all work, which requirement was not waived as he alleges.

The plaintiff, who had but little education, was for some years employed at manual labor in and about coal mines. He had been engaged also in operating commissaries or boarding houses, and had contracts with the Vesta Coal Mining Company to deliver coal to miners' homes, and for collecting garbage. His wife, who had a better education than he, controlled the finances, had general charge of the commissaries, and together with her sons did all the necessary clerical work in connection with these enterprises.

On November 16, 1934, as a result of an accident the plaintiff suffered a fracture of the head of the right femur. He was hospitalized until December 5, 1934 when he returned home where he was confined first to his bed for about three months, and then for a like period he used a wheel chair. Thereafter for some time he was able to get about to a limited extent on crutches. Now he uses a cane and is admittedly very lame. He testified that since the accident on the advice of his physician he tried to do light work at irregular intervals, but that he soon became exhausted, experienced pain, and was compelled to abandon those efforts. On one occasion he attempted to drive a truck and as a result he was confined to his bed for a week. He admitted that since the accident he has at various times delivered coal orders to the company's office, which is approximately 300 feet from his own home. He stated that some days he is able to go there three to five times, while on other days he can make but one or two trips, and that there are periods when he is bedfast for four or five

days. When he attempts to walk more than a fifth of a mile he becomes tired, suffers pain in his right hip, leg and back, and it is necessary for him to lie down frequently during the day. In short he claims he is unable to carry on any occupation for gain or profit; that his efforts are confined to minor matters at very irregular periods.

Three physicians called on plaintiff's behalf stated that his right hip joint is entirely ankylosed, but that he has a false joint formed by fibrous tissue which allows a certain amount of movement of his leg. They expressed the opinion that since the plaintiff met with his accident he is incapable of performing any work for compensation or profit. Dr. Mayer, a neurologist and psychiatrist, testified that the plaintiff's nervous system had become so affected by his injury that he is not only physically but mentally incapable of sustained effort.

The defendant does not dispute that the plaintiff is permanently disabled and suffers a certain amount of pain, but denies that he is totally disabled. The learned trial judge fairly submitted the disputed issues to the jury and told them "that the total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the plaintiff might be ordinarily capable of performing. This does not mean that the plaintiff must be a helpless invalid in order to recover under these supplemental contracts, nor is he barred from recovery because he may be able to perform a few trivial or desultory acts ...... or light work of a limited character and at irregular intervals ...... However, if he is now performing substantially the same duties in regard to his various businesses as before he was injured, he is not totally disabled."

This instruction followed the language of the Supreme Court in *Pearlman v. Metropolitan Life Insurance Company*, 336 Pa. 444, 9 A. 2d 432. There the plaintiff, who had a policy containing a total permanent

disability clause, owned and managed a store. He became ill with diabetes and a nervous disorder, which prevented him from performing his usual work. Following the recommendation of his physician, who thought that a moderate amount of labor might have a psychological effect, he went to his store and remained there two or three hours a day. The experiment proved unsuccessful. The Supreme Court held that the plaintiff's case was for the jury's consideration.

In *Cantor v. Metropolitan Life Insurance Company,* 108 Pa. Superior Ct. 1, 164 A. 145, the plaintiff was the owner of a drug store. The defendant denied liability under its policy containing the same provisions as those we are considering on the ground that the plaintiff, who was suffering from progressive spinal muscular atrophy which affected his motor or central nervous system, was not totally disabled. His bedroom, where he had to remain a great deal of the time, was directly over the store, but periods of the day he was in the store room and occasionally served a customer, received the money, or signed a delivery receipt, but the actual work of conducting the store, buying the goods, etc., was done principally by his wife and sons. We held in such circumstances, although the plaintiff was not absolutely helpless, the proof sustained the finding that he was totally and permanently disabled within the language of the policy. See, also, *Janney v. Scranton Life Insurance Company,* 315 Pa. 200, 173 A. 819; *Kramer v. Travelers Insurance Company,* 111 Pa. Superior Ct. 367, 170 A. 700; and *Eisenhauer v. New York Life Insurance Company,* 125 Pa. Superior Ct. 403, 189 A. 561.

A careful review of the evidence in this case convinces us that it is sufficient to support the finding that the plaintiff is totally and permanently disabled within the meaning of the policy.

That brings us to the consideration of the question whether the plaintiff is barred from recovering for a failure to file due proof of total and permanent dis-

ability, and to his contention that further proof thereof was waived by defendant. The plaintiff testified that on July 23, 1935, he obtained from the defendant and filled out a form used by persons claiming total and permanent disability, and mailed it to the home office of the company. On the reverse side thereof is an "Attending Physician's Certificate."

Dr. Spahr, plaintiff's attending physician, filled out the certificate. In response to question 13, whether the alleged total disability of the claimant would be permanent or temporary, his answer was "temporary." In answer to question 14, as to the approximate date when work might be resumed, he stated "indefinite." The doctor said at the trial that he was in error in stating in his certificate that the disability suffered by the plaintiff was merely temporary for as the case progressed he determined that he was permanently and totally disabled.

The plaintiff mailed in July 1935 the statement of his claim to the defendant company and received in reply a letter dated August 2, 1935. The third paragraph thereof reads as follows: "We regret to inform you that the facts and evidence submitted to us do not appear, in our opinion, to establish a claim that could be allowed, under the terms of your policies, at this time. The medical and other reports indicate you are not totally or permanently disabled." After receipt of this letter he went to the Charleroi office of the defendant company, and the manager thereof informed him that the home office had written to the local office a letter dated September 10, 1935, which was read to the plaintiff. The second paragraph states: "You may inform the insured that his claim was given very careful consideration, and we have ascertained that his activities have been very little different than they were before he suffered his injury, and we cannot conclude from the facts and evidence we have that he is either permanently or totally incapacitated for the performance of all

work ......" The plaintiff was then told that under the circumstances the defendant could not pay him benefits.

The manager of defendant company at Washington, Pennsylvania, on May 22, 1936, wrote the home office a letter stating that the attorney for the plaintiff had called at his office in regard to the claim and requested that he be informed as to the present status thereof. On May 29, 1936, the defendant in reply referred to that letter written to Milich on August 2, 1935, and then said: "It should be pointed out to the interested persons that we have not heard directly from the insured since we wrote him on August 2, 1935. We do not know what the situation is at the present time, but if it is contended that Mr. Milich is now totally disabled and will be so disabled permanently, we shall be pleased to give the matter of claim our consideration. Please inform us further."

The learned trial judge in his charge told the jury that the proofs furnished the insurance company were insufficient, but submitted for their determination the question whether the defendant had waived by its acts and conduct the filing of further proof by the plaintiff. We find no evidence to establish a waiver. The insurer did not deny its liability on other grounds than the deficiency of due proofs of total and permanent disability nor did it by any conduct or statement mislead the insured by causing him to believe that it did not require the performance of that precedent condition in the contracts. See *Amrovcik v. Metropolitan Life Insurance Company,* 119 Pa. Superior Ct. 176, 180 A. 727, and *Umbras v. Prudential Insurance Company of America,* 130 Pa. Superior Ct. 437, 198 A. 470. Quite to the contrary, the evidence conclusively shows that it expressly notified the plaintiff that it refused to pay benefits because his claim on its face showed that he was but temporarily disabled and insisted that he submit fur-

ther information concerning his physical condition. This he failed to do until the trial.

In *Janney v. Scranton Life Insurance Company,* supra, the facts are quite different as the insured there gave notice to the defendant that he claimed *permanent and total disability.* He was advised after the defendant's physician had examined him that the claim could not be approved as the information submitted did not bring the case within the provisions of the disability clause of his policies. No objection was made, as here, that the plaintiff did not comply with formal requirements as to notice. The court held there was a waiver of further notice, which gave the plaintiff the right to sue.

The judge further instructed the jury that if they found for the plaintiff he would be entitled to recover the instalments due him under the policies down to the date of the filing of the suits with interest from the date of the accrual of each instalment payment to the date of the verdict, the payments of both principal and interest to commence six months prior to the filing of proper proofs or to the waiver of such proofs. The appellee concedes that the court was in error in those instructions, but argues that as the jury found that there was a waiver, the benefits should have been payable six months prior to July 23, 1935, the date when the plaintiff filed his claims for disability.

Each policy provides that payments thereunder shall not begin "more than six months prior to the date of receipt of the required proof." The plaintiff did not furnish proof of total and permanent disability, as stated above, until March 14, 1940 when the case was tried. Prior to that time the insurer was certainly justified in denying liability in view of Dr. Spahr's statement in July 1935, when the claim was filed, that the plaintiff's disability was temporary. See *Lyford v. New*

*England Mutual Life Insurance Company of Boston,*
122 Pa. Superior Ct. 16, 184 A. 469.

Our conclusion is that the plaintiff is entitled to benefits beginning six months prior to the trial of this case, to wit, March 14, 1940, with interest on the deferred payments.

Judgments as modified are affirmed.