## Albosta v. North American Accident Insurance Co.

*T. G. Wadzinski* and *T. F. Farrell, Jr.,* for plaintiff. *James P. Harris,* for defendant.

LEWIS, J., for court en banc, April 21, 1948.—This matter comes before the court on a motion to lift a nonsuit.

The action is based on a policy of insurance issued to Walter Albosta under date of August 21, 1928, by the Eureka Maryland Assurance Corporation. As the result of a merger, defendant, North American Insurance Company, succeeded to the rights and liabilities of the original insurer.

Plaintiff, by his guardian, sought to recover disability payments of $10 per month for the period from January 3, 1938, to May 3, 1947, plus a refund of all premium moneys paid, together with interest, from August 21, 1937, to and including May 21, 1947.

The case came to trial on January 20, 1948, and at the conclusion of the testimony, this court, Lewis, J., directed that a compulsory nonsuit be entered. On January 21, 1948, plaintiff counsel's motion to lift the nonsuit was filed.

There are two reasons why the court is of the opinion that the motion to lift the nonsuit should be granted. The applicable provisions of the policy provide:

"If, after one year's premium shall have been paid on said policy and before default in the payment of any subsequent premium, the assured shall furnish to the corporation due proof that, prior to the maturity of said policy and before attaining the age of sixty years, he has become wholly disabled by bodily injury or disease so that he is and thereby will be permanently and continuously unable to engage in any occupation whatever for remuneration or profit, and that such disability has existed continuously for not less than sixty days prior to the furnishing of proof, thereupon the corporation, by endorsement on said policy, will grant the following benefits:

"Waiver of Premium.—Commencing with the anniversary date of this policy next succeeding receipt of such proof, the corporation will waive the payment of the premium which thereafter may become due under said policy during the continuance of the said total disability of the assured. In making any settlement

under said policy, the corporation will not deduct any part of the premiums so waived, and the loan and non-forfeiture values of the policy will increase from year to year in the same manner as though any premium waived under this provision had been paid in cash.

"Monthly Income.—Furthermore, the corporation will pay to the assured a monthly sum equal to one per centum of the principal sum assured under said policy ($10 for each $1,000 of principal sum assured), the first monthly payment to be made six months after receipt of such proof of said disability, provided the assured is then living and said disability still continues, and subsequent payments monthly thereafter during the continuance of said disability prior to the maturity of said policy. The amount of said policy payable at maturity shall not be reduced by any payments made under this disability provision."

On July 3, 1937, the insured was admitted to Retreat State Mental Hospital suffering from chronic dementia præcox and he has been continuously confined in that institution. Doctor Baskett described his condition as permanent and testified that the insured was totally incompetent.

Admittedly, all premiums have been paid on behalf of the insured to May 21, 1947, and disability benefits have been paid since May 3, 1947.

Under the terms of the policy, the furnishing of proof of disability was a condition precedent to recovery. Under the law, insanity of the insured does not eliminate the requirement of furnishing such proof: Farmers Trust Company v. Reliance Life Insurance Company of Pittsburgh, 140 Pa. Superior Ct. 115.

However, during the course of the trial, counsel for insured attempted to show that plaintiff's mother had inquired of one Anthony S. Dobkowski, the then purported general agent of defendant company, as to defendant company's liability or the insured's right by reason of his permanent total disability and had been

told by Dobkowski that there were no benefits accruing to the insured under the policy.

Plaintiff counsel's attempt to prove at the trial that such notice was given Dobkowski was unsuccessful. Thus, the record as it stood, contained no evidence that the alleged agent knew of the provisions of the policy or that he, Dobkowski, was an agent such as could bind the insurance company.

In disposing of the motion, the court has noted that stamped on the face of the policy in evidence was the following:

"Anthony S. Dobkowski, General Agent, Eureka Maryland Assurance Corporation, District Office, 737 S. Market St., Nanticoke, Pa."

Consequently, the court is of the opinion that this factor, to wit, that Dobkowski was the general agent for defendant company, sheds additional light upon the case, and this reason alone, in the interest of justice, requires that plaintiff counsel's motion be granted. Under these circumstances, the court believes that the case of Amrovcik v. Metropolitan Life Insurance Company, 119 Pa. Superior Ct. 176, controls; the facts in that case being similar to those in the case at bar (pages 182, 184):

"Appellant raises another question to the effect that, even though a total and permanent disability existed, there was not a compliance with the terms of the policy requiring due proof of such disability, from the insured, as a condition precedent to the plaintiff's right to recover. The testimony shows that the plaintiff sent his wife and daughter to the office of Thomas E. Prout, the district manager of the defendant company in that district, about a week after November 21, 1930; that they informed Mr. Prout the plaintiff was disabled, and described his physical condition to him. Both testified that Mr. Prout told them that the disability was not covered by the terms of the policies,

and that the plaintiff was not entitled to any benefits thereunder."

The court there held:

"We are of the opinion that the evidence shows that the plaintiff acted properly, under the circumstances, and did all that could reasonably be expected of him. Mr. Prout was the proper person to whom proofs of disability could be submitted. The plaintiff was illiterate, being unable to read or write. Sending his wife and daughter to the principal representative of the defendant company in that district was the natural and logical thing for him to do. Plaintiff's failure to file additional, formal, or technical proofs was plainly due to denial, by its agent, of liability on the part of the defendant, and to his refusal or neglect to furnish blank forms as requested."

It has long been a principle of law that a party to a contract cannot escape liability under his obligation on the ground that the other party has failed to perform a condition precedent, where the party attempting to dodge liability was the cause of that failure.

Secondly, at the conclusion of plaintiff's case, defendant made a motion for a compulsory nonsuit. Before the court ruled on the motion, plaintiff sought permission to reopen the case for the purpose of calling Mr. Dobkowski and showing that said Dobkowski was general agent for defendant company and was the proper party to be notified as to the insured's condition. Permission was granted to plaintiff. However, Mr. Dobkowski, who had been in court previously, had left the courtroom and could not be located.

Plaintiff's counsel then asked "if the court would entertain a motion for a voluntary nonsuit before disposing of defendant's motion for a compulsory nonsuit." Counsel for defendant company objected to the entry of a voluntary nonsuit. The court stated that it would hear counsel on the question. Whereupon, before the court could allow any motion, counsel for plaintiff,

apparently not certain of his right to suffer a voluntary nonsuit at any time prior to the submission of the case to the jury, stated: "We are willing to withdraw our motion and allow you to pass on Mr. Harris' motion." We believe that plaintiff's counsel may have been unintentionally misled at the time when he asked the above-mentioned question, which was almost equivalent to a motion, and, therefore, the court is of the opinion that plaintiff's rights should not suffer under the circumstances.

Plaintiff's motion to lift nonsuit is granted.