White, Appellant, *v.* Equitable Life Assurance Society of the United States.

Argued April 11, 1956.  Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Samuel J. Goldstein,* for appellant.

*Thomas Lewis Jones,* for insurer, appellee.

*P. K. Motheral,* with him *Reed, Smith, Shaw & Mc-Clay,* for employer, appellee.

OPINION BY WOODSIDE, J., July 17, 1956:

General George White, as an employe of the National Tube Company was insured under a group life and health policy and a certificate issued thereunder in the sum of $2000 together with disability insurance for a period of 26 weeks at the rate of $26 per week.

He ceased active employment with the tube company on September 10, 1950. Eight days thereafter he filed a claim for disability benefits under the provisions of the above policy. In the proof of loss his physician certified that he was suffering from "flu". In subsequent claims the physician certified White was suffering from hypertension and hypertension cardiac asthma. The Tube Company issued drafts for disability benefits for a period of 6 weeks ending October 29, 1950. The November contribution continuing the insurance in force for White was deducted from the draft issued on October 20, 1950.

There is testimony that White's services were terminated on November 9, 1950 after a company investigator returned White's employment badge with a report, and that notice of termination of his employment was mailed to White and not returned to the company by the post office. The company records show "reason for termination—quit—not reporting."

A relative of White requested additional proof of loss forms from the Tube Company in order to secure additional disability benefits and was refused them on the ground that he was no longer an employe. There-

after White made no apparent effort to contact his employer or the insurance company. There is no evidence that thereafter he ever claimed to be an employe of the tube company either furloughed or on sick leave.

For three or four weeks, in December 1950, White worked for a construction company, and in May and June of 1951 as a janitor for a department store and from June 1951 to December 1951 as a laborer on the Pittsburgh and Lake Erie Railroad Co. He applied for and received unemployment compensation benefits for the period from January 26, 1951 to April 6, 1951.

March 26, 1952 White died at the age of fifty-eight.

The plaintiff, Annie May White, widow of the deceased, filed an action in assumpsit claiming in her own right as beneficiary under the policy and certificate the sum of $2000 life insurance with interest, and as administratrix of the estate of General George White the sum of $520 with interest for twenty additional weeks of total disability at the rate of $26 per week.

The action in assumpsit was brought against the insurer, Equitable Life Assurance Society of the United States and in the alternative against the employer National Tube Company, now United States Steel Corporation. The action against the employer was brought on the theory that as agent for its employes under the provisions of the master policy it was remiss in the performance of its duty, thereby allowing the certificate to lapse.

At the trial, after the plaintiff had rested, judgments of compulsory nonsuit were entered upon motion of the defendants. This appeal was taken from the failure of the court below to remove the nonsuits.

The pertinent portions of the group insurance policy are:

"Termination of Individual Insurance. The insurance of any employee insured under this policy shall automatically terminate upon the earliest of: (a) the last day of the month in which the employee's employment in a class insured hereunder is terminated; (b) the last day of the last month for which premiums were paid for the insurance for such employee; (c) the date this policy is terminated or amended to terminate the insurance with respect to the class of employees to which he belongs.

"In the event of disability, the employee may continue his life insurance for one year following the end of the month in which disability commences, . . .

"Limitations Applicable to Disability Benefits. No benefits shall be payable under the provision hereof entitled 'Disability Benefits' (a) for any period of disability during which the employee is not under the direct care of a physician, . . .

"Extension of Life Insurance Death Benefit in Event of Total Disability. If any employee, before attaining 60 years of age and before cessation of his life insurance in accordance with the provision hereof entitled 'Termination of Individual Insurance' becomes totally disabled by bodily injury or sickness so as to be prevented from engaging in any occupation for compensation or profit and if (1) the employee remains continuously so disabled until his death, and (2) death occurs within the period defined in the following paragraph, commencing on the date of discontinuance of premium payments for the employee's insurance hereunder, then, upon receipt of due proof of such disability and death, the Society will pay to the employee's beneficiary an amount of life insurance equal to (a) the amount for which the employee was last insured under the policy if the employee's death occurs prior to the

first day of the month following the attainment of 65 years of age, or (b) $1250. if the employee's death occurs on or after the first day of the month following the attainment of 65 years of age.

"The period referred to in the foregoing paragraph shall be one year except that if before the end of such one year the employee submits due proof that such total disability has continued uninterruptedly until the date of submission of proof but in any event for not less than six months, the period will, subject to the conditions set forth in the following paragraph, be extended during the continuance of such total disability until one year from the date of receipt by the Society of such proof and for further periods of one year each so long as due proof is submitted, within three months prior to the beginning of each such year, that such total disability has existed continuously from the date of the last previous submission of proof."

The plaintiffs produced documentary evidence, not contradicted, that White quit his employment with the defendant. There is evidence that he was mailed written notice of termination of his employment and that he was told by his wife's sister-in-law that when she went to the employment office of the defendant employer in October or November of 1950 to get disability forms she was told that White was no longer considered an employe.

No insurance premiums were paid to the assurance company for the period subsequent to November 1950. During the time between November 1950 and his death in March 1952 the employer had no wages or disability payments from which it could deduct the insurance premium due from White to the assurance company. This White knew. Therefore, it was his responsibility, not his employer's, to see that the premiums were paid if he desired to keep the policy alive.

.. It would seem clear, therefore, that White's employment having been terminated, his insurance automatically terminated upon the last day of the month for which a premium was paid as provided in the group policy and the certificate. *Peyton v. Equitable Life Assurance Society,* 159 Pa. Superior Ct. 318, 48 A. 2d 145 (1946); *Best v. Equitable Life Assurance Society,* 165 Pa. Superior Ct. 452, 68 A. 2d 400 (1949).

The appellant argues, however, that deceased was totally disabled from September 10, 1950 to the date of his death, and that for this reason the policy should be considered as being in full force and effect at the time of his death, even though the premiums were not paid.

Appellant's evidence does not support this contention. In addition to two temporary jobs, deceased worked for approximately 6 months as a laborer on the railroad. He also obtained unemployment compensation. This was granted him upon his certification that he was physically able to accept employment. It is true that the fact a man can at irregular intervals do some light work of a limited character does not necessarily mean he is not totally disabled. *Kramer v. Travelers Insurance Co.,* 111 Pa. Superior Ct. 367, 371, 170 A. 700 (1934); *Cantor v. Metropolitan Life Insurance Co.,* 108 Pa. Superior Ct. 1, 164 A. 145 (1933). This rule, however, has no application to a situation such as this.

There was medical testimony that decedent was suffering from high blood pressure, that when not working he spent most of his time in bed resting, and that while employed on the railroad his fellow employees had to help him because he was not strong enough to carry his share of the work. But the fact remains he did work as a laborer on the railroad for over 6 months and did collect unemployment compensation upon his certification that he was employable and thus not totally dis-

abled. Many, if not most, men work during some periods of their lives when it is physically difficult for them to carry on and when it would be better for their health to withdraw from their employment. Without perverting the meaning of "total disability" we cannot apply it to the status of all people whose health would be better if they did not work.

Even a cursory reading of the opinions holding one totally disabled who does some work will clearly indicate that they are not applicable to a case such as this. See *Cantor v. Metropolitan Life Insurance Co.*, supra; *Armstrong v. John Hancock Mutual Life Insurance Co.*, 164 Pa. Superior Ct. 507, 66 A. 2d 468 (1949) ; *Milich v. Metropolitan Life Ins. Co.*, 145 Pa. Superior Ct. 430, 21 A. 2d 458 (1941) ; *Kramer v. Travelers Ins. Co.*, supra; *Amrovcik v. Metropolitan Life Ins. Co.*, 119 Pa. Superior Ct. 176, 180 A. 727 (1935) ; *Pearlman v. Metropolitan Life Ins. Co.*, 336 Pa. 444, 9 A. 2d 432 (1939).

The appellant contends that the insurance benefit plan was contained in a booklet offered by her and that the court erred in refusing to admit it into evidence. This booklet provides, inter alia, as follows:

"You may continue your life insurance during continuance of disability due to injury or sickness for one year following the end of the month in which disability occurs. In order to so continue your life insurance, you must make the contributions which are required of you which are not otherwise made by deduction from earnings or from any accident and sickness benefits to which you may be entitled under the plan. However, if you become totally disabled while insured and before age 60 and such disability continues beyond any period during which you are entitled to accident and sickness benefits, the amount of life insurance which was in force at the beginning of your disability will be continued in force during the continuance of your total disa-

594

bility, without further contributions after the period for which accident and sickness benefits are paid, provided you submit annually to the insurance company satisfactory proof of your continued total disability."

Counsel for appellant rests his contention that the booklet should have been admitted on the rule in *Turley v. John Hancock Mutual Life Insurance Co.*, 110 Pa. Superior Ct. 578, 168 A. 356 (1933), affirmed in 315 Pa. 245, 173 A. 163. See also *Jones v. Metropolitan Life Insurance Co.*, 156 Pa. Superior Ct. 156, 167, 39 A. 2d 721 (1944).[1]

Whether or not the booklet should have been admitted is not important in the determination of this case. Even if it were a part of the contract, or did accurately summarize its provisions, the nonsuit was still properly granted. As set forth above White did not make the payments required of him for the period subsequent to November 1950; he did not submit proof of continued total disability, and in fact he was not totally disabled.

Appellant contends that the insurer constituted the employer its agent in administering the plan, deducting and remitting premiums, processing proofs of loss and even in payment of the claims. But the liability of the employer would under any circumstances have to rest upon the conclusion that the deceased was totally disabled when his employment with the tube company ceased, and continued so until his death. As we pointed out above this is contrary to the plaintiff's evidence even when viewed, as it must be, in the light most favorable to the plaintiff.

Judgments affirmed.

---

[1] The provisions of the Act of April 26, 1929, P. L. 785, §1, 40 PS §532, quoted on page 585 of the Turley Opinion and on page 167 of the Jones Opinion were repealed by the Act of May 11, 1949, P. L. 1210.