GIOVANNI PANNONE *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE CO.

DECEMBER 31, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

HAHN, J. This is an action of assumpsit to recover disability benefits under a contract supplementary to a life

insurance policy issued to the plaintiff by the defendant company. The case was tried in the Superior Court by a justice sitting without a jury and decision was rendered for the plaintiff in the sum of $500. The case is before us on defendant's exceptions to the decision.

The defendant, an insurance corporation, issued to the plaintiff an endowment policy of insurance in the sum of $10,000. Attached to and forming a part of this policy is a supplementary contract, described as a "Disability Supplement," which for an additional premium provides for payment to the plaintiff of certain benefits in the event of total and permanent disability. The terms of said supplement are as follows:

"If, after the payment of the initial premium under this contract, . . . the Insured A. Has become totally and permanently disabled either physically or mentally so as to be continuously and wholly prevented for life, from engaging in any occupation or employment for wage or profit, or B. In the absence of conclusive proof of permanency of disability, if due proof as aforesaid, shall be presented that the Insured has been totally disabled by bodily injuries or disease, and has been thereby prevented from engaging in any occupation or employment for wage or profit for a period of not less than ninety consecutive days, the Company will grant the following benefits: 1. Waive the payment of further premiums due after the commencement of such disability, and 2. Pay to the Insured . . . from the commencement of disability and throughout its continuance, a sum equal to one per centum of the face amount of the policy exclusive of any policy additions."

The decision of the court below was based upon plaintiff's claims under paragraph "B" of the "Disability Supplement."

In 1929 plaintiff was the proprietor of a market and grocery store about five minutes walk from his home. The

business was conducted with the assistance of his brother-in-law and a boy who worked as a helper on Saturdays. In September, 1929, a few months after obtaining the policy of insurance now sued upon, plaintiff was seized with the illness which he alleges prevented him from working from September 10, 1929, to March 2, 1930, which disability forms the basis of this action.

Plaintiff testified that he began to experience trouble with his hands the latter part of August, 1929, that his hands became blue and swollen, causing him considerable pain, and that by the middle of September his fingers could not be flexed because of the swelling. On September 10, 1929, he consulted Dr. Fidanza, who testified that plaintiff's hands were swollen and his fingers flexed with difficulty when plaintiff first came to him, but that by December, 1929, plaintiff was much improved and able to flex his fingers. The doctor further testified that he did not tell plaintiff to stop work but advised him not to handle frozen meats at his store since that was the probable cause of plaintiff's trouble.

According to plaintiff's testimony he had recovered from his disorder and had been back at work for eight and a half months at the time of the trial, November 17, 1930.

It appeared in evidence that plaintiff was out and about during the period for which he claims disability benefits. He went to the doctor's office for treatment, never requiring attendance at his own house. He spent some of his time at a club situated next door to his store. His brother-in-law testified that it was plaintiff's practice to go into the store to see how business was going whenever he went out for a walk. Each night the cash receipts were turned over to plaintiff who went, himself, to deposit them in his checking account in the Union Trust Company at Olneyville Square, out of which account the expenses of the store were paid. A claim that plaintiff's business fell off during his illness was in some measure contradicted by the records of the company from which he purchased his supplies and

by the activity of his account at the bank. The company's records, produced in court, showed the usual amount of purchases by plaintiff's store, and the bank records indicated plaintiff's checking account had as many deposits and withdrawals as usual.

Paragraph "B," upon which plaintiff's action is based, provides that if due proof shall be presented that the insured has been totally disabled by bodily injuries or disease, and has been thereby prevented from engaging in any occupation or employment for wage or profit for a period of not less than ninety consecutive days, then the company will pay said benefits. Plaintiff was not a wage earner but the proprietor of a store; he might work or have someone work for him as he saw fit and as the business required. His business continued about as usual during his illness and it can hardly be said that he was not engaged in the occupation of proprietor, merchant or storekeeper during the whole of that time, nor is it shown he was without profit from the business during said period. No doubt he was less actively engaged in his occupation so far as his own physical efforts in the store were concerned, but such efforts, if an important part of his work, can scarcely be regarded as the whole extent to which he, a proprietor or owner, was engaged in the occupation. Physical participation is not essential to being engaged in an occupation or business for profit. In applying the term "engaged in business" the New York Court of Appeals distinguishes as follows between proprietor and servant: "A 'servant' or 'agent' would not be apt to have any proprietary interest, and, therefore, his connection would be established by the physical performance of various acts in the conduct of the business. Conversely, the word 'principal' with its associations naturally suggests one whose relation is that of proprietor, and who, as commonly in the case of a principal, might elect to intrust the active conduct of the business to the agents and servants already referred to. . . . It seems to us . . . that presumably he furnished his share

of the capital and was entitled to his share of the property and profits and to an equal voice in the control and conduct of the business, and that such conclusion would not be stayed simply because the assured individual dwelling at the place of business elected for a longer or shorter period, and for one reason or another, not to take that active part in the ordinary routine of business which both opportunity and legal right placed within his power." *Graves* v. *Knights of Maccabees*, 199 N. Y. 397, 402.

In the present case and during the period in question plaintiff did not suspend all activities in the store but visited it whenever he went out walking and generally supervised the business, especially the financial part of it. He was, if he obeyed his doctor's instructions, prevented from handling the frozen meats at the store; his activities were not otherwise circumscribed. Such facts do not warrant a finding that he was not engaged in any occupation or business for profit during the period. Plaintiff is in much the same position as the plaintiff in *Coad* v. *Travelers' Ins. Co.*, 61 Neb. 563, 567, where the court said: "To sum up, it appears from the record that plaintiff's business matters were attended to, looked after and directed by him during the period for which a recovery is sought, much in the same manner, speaking generally; and substantially in all important particulars as he was accustomed to do before the accident. It is true, as we view the evidence, that during most of the period mentioned he was greatly inconvenienced in the prosecution of his business by reason of the injury . . . and that he was not able to devote himself to his work with the close application, energy and attention in the performance of details that he otherwise would. His ability to concentrate his mind, and exercise cool, deliberate and calculating judgment regarding business affairs may have been more or less impaired by reason of the injury. But these matters can only be regarded in the light of a partial disability, for which no recovery was contemplated or can be had."

Even if it be conceded that plaintiff's position amounted to no more than that of a workman or clerk in the store, it does not appear that he suffered total disability. The courts have held quite generally that "total disability" is not to be construed literally. Inability of the insured to do the greater portion, the substantial part, of his work or duty is total disability, but inability to do some one thing or several things constituting a lesser portion of his work is not total disability. *Lee* v. *N. Y. Life Ins. Co.*, 188 N. C. 538; *Cato* v. *Aetna Life Ins. Co.*, 164 Ga. 392, 398.

As the plaintiff has failed to prove total disability defendant's exception is sustained. The plaintiff, on January 13, 1932, at 10 o'clock a. m. will be given opportunity to show cause why the case should not be remitted to the Superior Court with direction to enter judgment for the defendant.

*O'Shaunessy & Cannon*, for plaintiff.

*George Hurley, Walter V. Moriarty, Walter V. Connly*, for defendant.