Janney *v.* Scranton Life Insurance
Company, Appellant.

Argued April 18, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, and LINN, JJ.

*W. J. Fitzgerald,* with him *W. Heyward Myers, Jr.,* of *Morgan, Lewis & Bockius,* for appellant.

*George F. Lowenthal,* of *Horton & Lowenthal,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, May 21, 1934:

Plaintiff sued to recover damages under the total permanent disability provisions, identical in language, in two life insurance policies issued by defendant to him. He obtained a verdict and judgment, and defendant appeals, stating in its brief that three questions are involved:

1. Should the court below have declared as a matter of law that the injuries suffered by plaintiff did not constitute total permanent disability as defined in the policies?

2. Should the court below have declared as a matter of law that plaintiff did not submit to defendant, while

the policies were in force, proof of total permanent disability as required by the policies? and

3. Should the court below have declared as a matter of law that defendant did not waive any of the provisions of the policies with respect to the proofs of disability?

We are of opinion that the court below was not required to answer, as a matter of law, any of these questions favorably to defendant, and hence its judgment must be affirmed.

The disability provisions of the policies so far as important here, are as follows:

"TOTAL PERMANENT DISABILITY: If, prior to attaining the age of sixty full years and while this Policy is in full force and effect, the Insured becomes physically or mentally incapacitated to such extent as to be wholly, continuously, and permanently unable to engage in any occupation or profession or to perform any work or service for compensation, gain or profit; then and in such event, upon due proof made to the Company of the fact of such disability, the Company, provided all premiums have from year to year been duly paid, shall waive the payment of any premium thereafter becoming due upon this Policy during the continuance of such disability. Upon the acceptance of such proof, the Company thenceforth during the continuance of such disability will pay to the Insured for life a Monthly Income of one per cent of the Face Amount Insured, except that during the first year of such income the monthly payment shall be two per cent instead of one per cent of the Face Amount Insured......

"The Company shall have the right at any time, but not oftener than once a year, to require due proof, by an examination of the Insured by its duly appointed Medical Examiner, of the continuance of such disability. If the Insured shall so far recover as to be able to engage in any occupation, profession, work or service for compensation, gain or profit, no further premium will

be waived nor monthly income paid; and all premiums thereafter falling due shall be paid by the Insured in conformity with the requirements of the Policy."

While it is of course true that where the language of an insurance policy is clear and unambiguous it cannot be construed to mean otherwise than what it says (Urian v. Insurance Co., 310 Pa. 144, 150-51) yet it must be given a reasonable interpretation, in the light of the subject-matter and the situation of the parties at the time the contract was made, and such construction must not be manifestly absurd, nor effectually prevent a recovery under all circumstances. So, too, "in cases of doubt or ambiguity, the provisions of a life insurance policy [and of all other insurance policies] will be viewed in the light most favorable to the insured": Brams v. New York Life Ins. Co., 299 Pa. 11.

The fact that this plaintiff would be able at times to beg, or to pick rags or sell peanuts on the streets, or that, for brief periods, he can do something which will necessarily result in causing him great pain and suffering, or in loss of life, will not exclude him from recovering, notwithstanding the broad language used in the policies. As said in Cantor v. Metropolitan Life Ins. Co., 108 Pa. Superior Ct. 1: "In Losnecki v. Mutual Life Insurance Co. of N. Y. [106 Pa. Superior Ct. 259] we had occasion to construe the word 'permanently' as used in the phrase 'totally and permanently disabled' in a similar policy of insurance, and we held that it was not used in the sense of absolute perpetuity, but relatively in contradistinction from 'temporary' or 'transient.' We think this policy, considering the whole clause involved, requires a similar construction of the word 'totally'; that the term 'totally disabled' is not used in a sense of absolute helplessness, mentally and physically, but rather, as expressed by the Supreme Court of Rhode Island, in Pannone v. John Hancock Mutual Life Ins. Co. 157 Atl. 876, 878, in construing a similar policy, 'Inability of the insured to do the greater

portion, the substantial part of his work or duty'......
A literal construction of the words 'totally disabled' as used in disability and accident insurance policies has been rejected by the courts of many of the states, e. g. Georgia (Cato v. Ætna Life Ins. Co., 164 Ga. 392, 138 S. E. 787, 790); Arkansas (Great Eastern Casualty Co. v. Robins, 111 Ark. 607, 164 S. W. 750, 751, where the insured was a publisher); Kentucky (Fidelity & Casualty Co. v. Bynum, 221 Ky. 450, 298 S. W. 1080, 1082, where they were defined as, 'incapacitated from performing any substantial part of his ordinary duties, though still able to perform a few minor duties and be present at his place of business'); Vermont (Clarke v. Travelers Ins. Co., 94 Vt. 383, 111 Atl. 449); South Carolina (Brown v. Missouri State Life Ins. Co., 136 S. C. 90, 134 S. E. 224, 225, where it was held that the term 'does not mean absolute helplessness or loss of reason, but an inability to do substantially all of the material acts necessary to the prosecution of insured's business or occupation in the customary and usual manner'); Oklahoma (Ozark Mut. Life Assn. v. Winchester, 116 Okla. 116, 243 Pac. 735, 736, where it was held that the claim was not affected by a few occasional and trivial acts relating to the business); Illinois (Davis v. Midland Casualty Co., 190 Ill. App. 338, 340), insured need not be helpless and can recover although he is able to give instructions to others."

So, in Kramer v. Traveler's Ins. Co., 111 Pa. Superior Ct. 367, 371, after reviewing with approval the earlier cases in that court, it added "The fact that a man can at irregular intervals do some light work of a limited character does not prevent recovery."

In the instant case it is not necessary to go so far as in some of the cases cited, but, speaking generally, we are in accord with them. Here there was ample proof for the court below to submit to the jury to determine whether or not plaintiff was "incapacitated to such an extent as to be wholly, continuously and permanently

unable to engage in any occupation or profession or to perform any work or service for compensation, gain or profit." Considering the policy in its entirety, the following statement of the trial judge would appear to be fully justified: "......there is in this policy somewhat of an inconsistency. It gives the right to this income to the insured if he is totally, continuously and permanently disabled in the manner I have indicated; and then further on it says that, if he gets better, the payments of income will stop and the prior relations of the parties under the policy shall be resumed, and the plaintiff will then return to the payment of the premium. It is, therefore, perfectly obvious that they did not mean permanent in the ordinary sense of that word. What the parties meant was this,—and the interpretation and meaning of the language is for the court to give you,—that if the insured gets into such physical condition that the probabilities appear to be that he will be permanently disabled, his right to the monthly income then arises and continues until it develops that that physical disability which was apparently permanent has, for any reason, ceased." In this connection see Tibbetts v. Prudential Ins. Co., 313 Pa. 310, where we approved the above cited opinions of the Superior Court.

Laying aside all the other injuries suffered by plaintiff as the result of the accident, it appeared that his right eye was so seriously injured that it had to be wholly removed; that the left eye was so injured that the center of his vision therefrom was totally gone, with the result that he could not even see the tools with which he would have had to work; that out of the sides of that eye he could see objects that were far off, but not if they were near at hand. In these matters he was corroborated by defendant's expert oculist as well as by his own. He further said that he had tried to work at other businesses as well as his own, which was that of an electrical engineer, but found that he could not

work at any of them. And it is not to be overlooked in this connection, that, at the trial, in the presence of the jury, defendant's counsel stated that they did not contend that plaintiff was malingering. His wife and the two physicians who attended him, corroborated his story. One of the physicians said that he is "an awful nervous wreck at the present time," and when asked "Q. Apart from giving your prognosis as to the effect of this case up to the present time, since the accident, in your opinion, has he been able to engage in any occupation, any gainful occupation?," he answered "No sir, he has not." The other doctor, who was an eye specialist, says substantially the same thing, concluding his testimony with the statement: "Well really I don't know of any occupation he could engage in, considering his education along the lines that he started out his life in. It is very difficult for any man to take up a new occupation." It also appeared that the sight of the left eye is getting worse, the expert witness last referred to saying also: "The probabilities are very much against him regaining what he has already lost. The probabilities are that he will have more involvement........rather than that he will have improvement."

Defendant's witnesses in their testimony very inadequately met that evidence. One of their physicians said that he had made two examinations of plaintiff, and that he did not think plaintiff was "wholly, continuously and permanently unable to engage in any occupation or profession, or to perform any service for gain or profit." But he also said: "I could not pass any opinion on the left eye, because it looked perfectly normal to me; but it required a certain examination that I was not prepared to make to determine the exact condition of the left eye." Defendant's eye specialist had, however, made such an examination, and he testified that "The left eye had a vision of five-thirtieths *with a large*

*central blind area,* but the remainder of the field of vision was perfectly normal."

After a fair and impartial charge to the jury, a verdict was returned for plaintiff, which the court in banc sustained. As there was evidence to support this conclusion, we can do no less than affirm the judgment entered on that verdict, and this disposes of the first and principal question raised.

The second question said to be involved, viz., "Should the court below have declared as a matter of law that plaintiff did not submit to defendant, while the policies were in force, proof of total permanent disability as required by the policies?" requires but little consideration. What the policies require is that "due proof [be] made to the company of the fact of such disability." It would seem that defendant's contention is that this constituted it as the final arbiter, in its own case, of the question of "due proof." If the clause meant that, probably no court would sustain it; but that is not its true import. What it does mean is that the insured shall submit "due proof......of the fact of such disability"; whether or not there is sufficient to justify a recovery is a matter for the trial tribunal. Plaintiff in due course gave to defendant written notice of that fact, in a series of letters, resulting in defendant's physician examining plaintiff, defendant postponing decision on what they would do until they heard from him, and then closing the pending matter by writing "After carefully considering the completed file in connection with your claim for disability benefits under the above contracts, we regret to advise you that the company cannot approve your claim for the reason [not that you have not complied with the formal requirements as to notice, but] that the information submitted in your case does not fall within the provisions of the disability clause in your policies." This operated as a waiver of a requirement of further notice, gave plaintiff the right to sue at once, and limited defendant to the defense ex-

pressed in that letter: Did the injury which plaintiff suffered "fall within the provisions of the disability clause in [his] policies?" What defendant was entitled to have was notice of the fact of permanent disability, not such proofs as would be required on the trial of the case. The former it got, and "as notice" it made no objection thereto.

The third question involved requires no further consideration. It is covered by what we have already said in answering the second question.

The judgment of the court below is affirmed.