Woolford *v.* The Equitable Life Assurance Society
of the United States, Appellant.

Argued May 4, 1942.

226

Before Keller, P. J., Cunningham, Baldrige, Rhodes, Hirt and Kenworthey, JJ.

Karl W. Warmcastle, for appellant.

Samuel J. Goldstein, for appellee.

Opinion by Baldrige, J., July 23, 1942:

The Equitable Life Assurance Society, the appellant herein, issued a group insurance policy covering the lives of eligible employees of the Carnegie-Illinois Steel Corporation, the employer of Harvey Wheeler, a holder under the master policy of an individual certificate wherein his mother, Mattie B. Woolford this plaintiff, was named beneficiary.

On November 17, 1937, Harvey Wheeler, who was then 25 years of age, voluntarily quit his employment due, according to the plaintiff's contention, to physical disability and never worked thereafter. The writing called a "Termination Interview" shows that he was not working the previous day owing to illness, and there is other evidence indicating that he had not worked after November 11. Under the terms of paragraph 6 of the "Special Provisions" of the policy his insurance automatically ceased 31 days after he quit work or on December 18, 1937. In this paragraph it is provided also that if within one year after the insured's death

due proof is submitted to the insurer that he was totally disabled by bodily injury or disease on the expiration of the 31 day period so that he could not engage in any occupation for compensation or profit and that disability continued to his death, occurring not longer than 12 months thereafter, then the insurance shall be paid to his beneficiary.

On October 18, 1938, Wheeler died as the result of bilateral lobar pneumonia. Claim was made by the beneficiary named in his certificate under the extended death benefit provisions of the group policy for the payment of the insurance money. The defendant denied liability and suit was brought. The trial resulted in a verdict in favor of the plaintiff for $1675. After motions for judgment n. o. v. and for a new trial were refused this appeal was taken.

The appellant's assignments of error relate to (1) an alleged failure of the plaintiff to sustain the burden of proof that the insured was totally disabled within the terms of the policy on December 18, 1937, and that his disability continued until his death; and (2) that the court erred in its charge in defining "total disability."

The insured from 1930 to 1937 worked in a "mud mill," where the atmosphere was "dusty practically all the time." His duties included the preparation of clay for cementing up the doors of coke ovens operated by his employer. In 1936 he had contracted pneumonia and some reference was made to his previously having that same disease. Following his apparent recovery from the 1936 attack after an illness of two weeks he resumed his employment but according to six witnesses, three of whom were members of the family and the others friends, he soon began to lose weight markedly, to have hemorrhages from the nose and mouth, a severe cough, he suffered from night sweats, and grew so weak that he was able to walk a short distance only without rest-

ing. On October 12, 1938, he contracted bilateral lobar pneumonia, which was classified as type 1. He was taken to the hospital during the evening of October 18, 1938, and died a few hours thereafter.

Dr. Lebovitz and Dr. Weddell, specialists in the diagnosis and treatment of pulmonary tuberculosis, each, in answer to a hypothetical question embodying the essential facts, expressed the opinion that the insured had active pulmonary tuberculosis during the year prior to his death, which totally disabled him from engaging in any gainful occupation.

Dr. Shuster testified that he had treated the insured for pneumonia in 1936 and later he visited his office complaining of a cough, a pain in his lung, and of night sweats; that at that time he diagnosed his ailment as pleurisy, but he thought there was an indication of tuberculosis as he had lost weight and apparently had not recovered as he should have from the pneumonia. He advised the man to have an X-ray taken, but he did not know whether that was done.

Dr. Randall, a friend of the insured, saw him in the fall of 1937 and noticed that he was losing weight, and becoming emaciated. Wheeler later came to his office complaining of a cough and profuse perspiration. The doctor's examination at that time revealed that Wheeler had mucuous rales in both lungs and a chronic cough. He advised him to go to the McKeesport tuberculosis clinic, but this advice apparently was not followed. This witness concluded from the insured's appearance and the conversations he had with him that he was not able to work. This medical testimony was all admissible: *Cooper v. Metropolitan Life Insurance Company*, 323 Pa. 295, 302, 186 A. 125; *Becker v. Prudential Life Insurance Company*, 124 Pa. Superior Ct. 138, 142, 188 A. 400.

The defense laid much stress upon the report of an autopsy which was performed, in the absence of the

hospital pathologist, by Dr. Bondi the resident physician. He testified that the examination of the lungs confirmed the diagnosis of pneumonia, but that he made no microscopic examination of any of the lung tissues to determine the presence or absence of tubercular infection, as the primary purpose of the autopsy was to ascertain the cause of death rather than to determine the presence of any other disease the man may have been suffering from prior to contracting pneumonia. This witness stated that he did not see any lung cavities or other conditions that indicated to him that the deceased had suffered from acute pulmonary tuberculosis.

Dr. Lebovitz had stated that he did not base his opinion on the autopsy report as in the absence of a microscopic examination of the section of the lungs he did not regard it as complete. Dr. Marcy, who specialized in diseases of the lungs, was called by the appellant. He said that from examination he made of the autopsy reports and of the records of the insured he found no evidence of active pulmonary tuberculosis. Dr. Mills, who was in charge of the insured while he was in the hospital, was called by the defendant also and expressed an opinion in accord with that of Dr. Marcy.

We therefore have a direct conflict in the experts' opinions. The witnesses who gave a description of the perceptible changes that took place in the insured and the manifestations of his disability merited consideration in the hands of the jury. "...... a lay witness may testify as to certain matters involving health, the apparent physical condition of a person, and as to obvious symptoms, but his testimony must be confined to facts within his knowledge, and may not be extended to matters involving the existence or non-existence of a disease, which is only discoverable through the training and experience of a medical expert." *Baum v. Metropolitan Life Insurance Company,* 144 Pa. Superior Ct.

37, 41, 19 A. 2d 486. See, also, *Critzer et ux. v. Donovan et al.,* 289 Pa. 381, 137 A. 665.

The evidence, lay and medical, adduced by the plaintiff was sufficient in quantity and quality to take the case to the jury: *Losnecki v. Mutual Life Insurance Company,* 106 Pa. Superior Ct. 259, 264, 161 A. 434; *Amrovcik v. Metropolitan Life Insurance Company,* 119 Pa. Superior Ct. 176, 181, 180 A. 727; *Feigenbaum v. Prudential Life Insurance Company,* 144 Pa. Superior Ct. 412, 19 A. 2d 542.

That brings us to a consideration of the complaint that the jury was given an incorrect definition of "total disability."

The trial judge quoted from the Supreme Court's opinion in *Cooper v. Metropolitan Life Insurance Company,* 317 Pa. 405, 408, 177 A. 43, which reads as follows: "...... total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing." Then he read the following excerpt from our opinion in *Feigenbaum v. Prudential Life Insurance Company,* supra, p. 416: "The test of ability to engage in work for a living is not some fanciful or imaginary occupation conjured up for the occasion, and in which there is no likelihood of any one employing the insured, but the disability must be such 'as will prevent the insured from engaging in and carrying on any gainful business or occupation *and himself performing a substantial and essential part of the work incident thereto.*'" (Italics supplied.)

The appellant objects to the italicized portion which was applicable to the facts in the Feigenbaum case although the record discloses that its attorney handed that case to the trial judge before he charged the jury. Feigenbaum had been personally conducting his own clothing store and an important issue involved was

whether or not he was physically able to do some things in connection with the management of his store and collect rents from his property.

In *Cooper v. Metropolitan Life Insurance Company,* supra, (317 Pa. 405) the plaintiff had a policy which provided for payment of benefits if an accidental injury continually and wholly disabled and prevented the insured from performing all or any kind of duty pertaining to the type of occupation he was engaged in at the time of the accident. The jury was instructed that totally and wholly disabled meant not "absolute helplessness, but rather the inability of the insured to do the greater portion or substantial part of his work or duty." The Supreme Court in reversing said that those instructions left the jury free to find the plaintiff was entitled to recover so long as he could not perform the substantial part of the occupation in which he was engaged at the time of the accident, which was in conflict with the terms of the policy.

In *Pearlman v. Metropolitan Life Insurance Company,* 336 Pa. 444, 9 A. 2d 432, suit was brought on a policy containing a total disability clause. Total disability was defined by the trial judge exactly as in the Cooper case (317 Pa. 405). The Supreme Court stated, p. 448: "Of course, as was there [Cooper case] further pointed out, this does not mean that the insured must be a helpless invalid in order to become entitled to benefits under such a policy, nor is he barred from recovery because he may be able to perform a few trivial and desultory acts or light work of a limited character and at irregular intervals, but it does mean that it is not enough for the insured to show that he is unable to do a substantial part of his ordinary work." See, also, *Milich v. Metropolitan Life Insurance Company,* 145 Pa. Superior Ct. 430, 433, 21 A. 2d 458.

In *Silvano v. Metropolitan Life Insurance Company,*

135 Pa. Superior Ct. 260, 5 A. 2d 423, cited by the appellant, there were two irreconcilable statements made by the learned trial judge in his charge. One was right and the other was wrong. The trial judge correctly charged the jury that under the terms of the policy the plaintiff could not recover unless he was unable to perform any of the duties of any occupation which he might ordinarily be capable of performing. In affirming plaintiff's point he stated to the jury that "plaintiff's inability to do the greater portion, the substantial part of his work or duty is sufficient to enable him to recover under the policy." That point should not have been affirmed. It was in conflict with the terms of the policy and an incorrect statement of the law applicable to the case, as is clearly pointed out in *Cooper v. Metropolitan Life Insurance Company,* supra, (317 Pa. 405), and *Pearlman v. Metropolitan Life Insurance Company,* supra.

In view of the issues of fact in the case before us we have no doubt that the jury understood from the charge of the court that the plaintiff could not recover if the insured was able to do a substantial part or portion of the work that he ordinarily was capable of performing. The definition employed by the trial judge in this case was quite different than those used in the cases relied upon by the appellant. Taking the charge in its entirety we find no reversible error therein.

Judgment of the court below is affirmed.