Armstrong, Appellant, *v.* John Hancock Mutual
Life Insurance Company.

Argued April 11, 1949. Before Rhodes, P. J., Hirt,
Reno, Dithrich, Arnold and Fine, JJ. (Ross, J., absent).

*Dickson Andrews,* with him *F. Joseph Thomas,* for appellant.

*Walter J. McClintock,* for appellee.

OPINION BY DITHRICH, J., June 1, 1949:

Almeron N. Armstrong, appellant's deceased husband, was employed as a timekeeper by the Struthers-Wells Corporation in Titusville, Pa., from June 21, 1944, to May 31, 1945. In the course of his employment there was issued to him a certificate certifying that he was insured for the sum of $1000, payable to his wife as beneficiary under the usual standard policy of group insurance.

The master policy and the individual certificate contained two provisions pertinent to the issue here involved, as follows: "The insurance of an employee shall automatically cease when . . . his employment with the Employer shall terminate; provided, . . . that if proof is furnished that such employee terminated employment with the Employer on account of total disability . . . then the amount of insurance on the life of such employee at the date of termination of employment shall be paid to the beneficiary, provided said proof is furnished to the Company at its Home Office within ninety days of the death of said employee."

Armstrong died June 13, 1945, thirteen days after the termination of his employment, from a gunshot

wound accidentally inflicted by his son. His widow then brought suit on the certificate of insurance issued to him.

The evidence was conflicting as to the reason for termination of the employment, but upon submission of that question to the jury, it found that it had been terminated on account of the total disability of the employee and returned a verdict in favor of appellant. The learned judge of the court below granted appellee's motion for judgment n. o. v. on the ground that ". . . the uncontradicted evidence establishes that the employment was terminated by the discharge of the employee." John L. Wilson, the employer's employment manager, testified that he discharged the employee "for unsatisfactory service," but there was sufficient competent evidence to support an inference that the "unsatisfactory service" was due to the employee's disability.

His widow testified that during the period from September 25, 1944, three months after he had entered the employ of the Struthers-Wells Corporation, until the time of his death, she had on one occasion found him lying unconscious on the floor in their home when she got up in the morning; on two other occasions she had found him lying unconscious in the yard; that on Christmas Day, 1944, he fell on the floor in his son's home and had to be helped into a chair, where he sat breathing heavily; that toward the end he could sleep only when sitting up in a chair; that he moved about very slowly and with difficulty, stopping frequently to get his breath.

Dr. E. P. Cuthbert, a fully competent and well-qualified physician, testified that he had made extensive examinations of the insured in the Spring and Summer of 1941; that he found that he had a heart lesion or mitral regurgitation that caused him to have frequent fainting spells due to the failure of the mitral valve to pump enough blood to the brain, a condition that

would exist as long as the man lived; that it would get worse as time went on, and it was his "professional opinion" that the insured "was totally and permanently disabled from performing any work" on the day his employment was terminated.

Notwithstanding this evidence and the reasonable inferences therefrom, which in view of the verdict of the jury must be considered in a light most favorable to plaintiff (*Grande v. Wooleyhan Transport Co.*, 353 Pa. 535, 46 A. 2d 241; *Stabelli v. Somerton B. & L. Assn.*, 343 Pa. 460, 23 A. 2d 477; *McFadden v. Pennzoil Company*, 336 Pa. 301, 9 A. 2d 412), the court held that there was not "any evidence . . . to submit to the jury to establish that . . . Armstrong terminated his employment with the employer on account of total disability . . ." In our judgment the learned court put a too literal and narrow construction on the proviso in the insurance contract that proof must be furnished that the "employee terminated employment with the Employer on account of total disability." It stated in its opinion that: "As we read the contract, it is not sufficient for the plaintiff to show that her husband (the employee) was in bad physical condition, or that his condition was such that he should not have been working, or that it was dangerous for him to work, or that by reason of physical disability he wasn't able to work; the requirements of the contract are that plaintiff must furnish proof that the *employee terminated the employment* with the employer on account of total physical disability.

"In this case there is no evidence that the employee terminated the employment at all; the uncontradicted evidence of the Superintendent of the Struthers-Wells Corporation is that the employer terminated the employment by discharging the employee."

Even though the evidence of the employment manager, not the superintendent as stated by the court, be

"uncontradicted," being oral it was still a question for the jury. *Szczygielski v. Travelers Ins. Co.*, 114 Pa. Superior Ct. 352, 174 A. 662. The only reasonable construction to be placed upon the clause is that it was intended to protect any employee who was totally and permanently disabled when his employment was terminated, whether by resignation or discharge, and any doubt as to the intention must be resolved in favor of the insured and against the insurer. "A contract of insurance will, if possible, be so construed as to protect the insured and doubts, if any, will be resolved in his favor": *MacDonald v. Metropolitan Life Insurance Co.*, 304 Pa. 213, 218, 155 A. 491, 492. Furthermore, if the insured was totally disabled at the time of the termination of his employment for whatever cause, his right to continued protection under the policy became vested. *Turley v. John Hancock Mutual Life Insurance Co.*, 315 Pa. 245, 173 A. 163.

We are of opinion that the learned court fell into error in invoking the "inference upon inference" rule in this case. The testimony of appellant and Dr. Cuthbert as to the physical condition of the insured was direct and positive and did not need an inference to support it. But even if it did, we still think the question was for the jury. The lower court, after quoting from the opinion in *New York Life Insurance Co. v. McNeely*, 79 P. 2d 948, Wigmore on Evidence, Vol. 1, page 439, that the "'inference upon inference' rule in civil cases" is based on the principle that "a certain quantum of proof" is required, held that "Here the necessary quantum of proof is lacking."

In that connection consideration must be given to the fact that the insured was fifty-eight years of age when he entered the employ of his employer; that due to the war older men were being employed than had been the case in time of peace; that the strict physical

requirements and examinations were then relaxed; and that against the advice of his physician that he was totally disabled from performing any work, he undertook to perform the light duties of a timekeeper.

As stated by RHODES, J., now P. J., in *Amrovcik v. Metropolitan Life Insurance Co.,* 119 Pa. Superior Ct. 176, 180, 180 A. 727, 729: ". . . the words 'total disability' as used in the policies do not mean that the insured must be absolutely helpless, mentally and physically. Cantor v. Metropolitan L. Ins. Co., 108 Pa. Superior Ct. 1, 164 A. 145; Janney v. Scranton Life Insurance Company, 315 Pa. 200, 173 A. 819. In the recent case of Cooper v. Metropolitan Life Insurance Company, 317 Pa. 405, 408, 177 A. 43, 44, the Supreme Court, in an opinion by Mr. Justice KEPHART, said: 'While the words of the policy must receive reasonable construction and, literally interpreted, the words total disability to engage "in any and every occupation of employment for wage or profit" would require that an insured be a helpless invalid before he would be entitled to benefits under the policy, this cannot be what the parties intended. It is rare that any man is incapacitated from doing some work; many a blind man weaves baskets; a man with both legs and one arm off can sit in a doorway and sell lead pencils, or act as a telegraph operator; but it cannot well be argued that either is not totally disabled. A reasonable interpretation of the words of the policy is, that the total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing.' "

In the words of the employment manager: "He was a very good timekeeper but it got to the place where we had to let him go." We do not agree with the conclusion of the learned court below that ". . . the positive

testimony of the employment manager . . . so totally rebuts such an inference [of termination of employment by reason of total physical disability] that we think it becomes the duty of the court to hold that the conditions of the policy have not been met."

In granting defendant's motion for judgment n. o. v. the trial judged assumed the testimony of Wilson to be true. When a similar situation arose in *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 238, 163 A. 523, 524, the Supreme Court said: "In granting plaintiff's motion for binding instructions, the trial judge assumed the testimony of Carlisle and Estep to be true. This he had no right to do, even though it was *uncontradicted.* In the words of Justice SHARSWOOD, 'However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence': Reel v. Elder, 62 Pa. 308. This rule is firmly established [citing cases]." (Italics supplied.) See also *Rice v. Bauer,* 359 Pa. 544, 59 A. 2d 885; *Masters v. Philadelphia Transportation* Co., 160 Pa. Superior Ct. 178, 50 A. 2d 532.

*Woolford v. The Equitable Life Assurance Society of the United States,* 149 Pa. Superior Ct. 225, 27 A. 2d 411, differs from the instant case in but one material respect. There the employment record did not show that the employee had been discharged, nor on the other hand did it show that he had terminated his employment because of total disability. A writing called "Termination Interview" showed nothing more than that the insured had voluntarily left his employment. Yet, under the extended death benefit provisions of the policy, proof by the beneficiary that the insured had active pulmonary tuberculosis during the year prior to

his death was sufficient to take the case to the jury, notwithstanding the cause of death, as revealed by an autopsy report and the testimony of the attending physician, was lobar pneumonia. There, as here, defendant denied that the insured was totally disabled when his employment was terminated and on the contrary averred that he was then and at all times prior thereto able to engage in an occupation for compensation or profit. The Court, however, in an opinion by BALDRIGE, J., later P. J., held, page 230, that "The evidence, lay and medical, adduced by the plaintiff was sufficient in quantity and quality to take the case to the jury [citing cases]."

Appellee further contends that even if the employment had been terminated by total disability it was not furnished with the required proof within ninety days of the death of the insured. There was, however, evidence submitted to the jury under proper instructions from the court that the beneficiary, sometime between the thirteenth and the thirtieth of June, 1945, had asked the agent of the company for the necessary forms of proof. None were furnished her at that time, and on July 17 she was notified by letter from the agent that "In view of the fact that your husband left the employment of the Iron Works and had not converted his life insurance prior to his death, the insurance company cannot pay your claim."

In *Umbras v. Prudential Insurance Co. of America,* 130 Pa. Superior Ct. 437, 198 A. 470, where the evidence on behalf of the plaintiff showed that within a few days after the death of the insured she had made demand on the agent in charge of defendant's office for payment of the policies and had been informed that the company denied all liability because the policies were not in force when the insured died, this Court, in an opinion by

KELLER, P. J., said, pages 440, 441: "The fact that the company refused to pay the claims and defended against the plaintiff's action on the policies, in toto, on the grounds stated by the agent, . . . is sufficient evidence that the company had denied liability on that ground and that the agent was authorized to act for the company in denying liability. Where the company defends an action on the policy on the very ground stated by the agent to the beneficiary, his statement will be presumed to have been authorized by the company or ratified and affirmed by it. It is well settled that where an insurance company denies liability under the policy because of some ground of defense wholly apart from the furnishing of proofs of death, the beneficiary under the policy can bring an action without furnishing formal proofs of death. [Citing among other cases, Girard Life Insurance, Annuity and Trust Co., etc., v. Mutual Life Insurance Co. of New York, 97 Pa. 15, 24, 25.]"

In *Poch v. Equitable Life Assurance Society of United States,* 343 Pa. 119, 129, 130, 22 A. 2d 590, 594, 595, it was held that: ". . . where an insurer refuses to pay a loss because of some alleged defense wholly apart from the furnishing of preliminary notice and proofs of loss, it has been repeatedly held that it thereby waives the necessity of furnishing such notice and proofs, except on the trial, upon the ground that such conduct of the insurer is tantamount to a statement that preliminary proofs of loss are not desired and upon the ground, as stated in Fedas v. Ins. Co. of State of Penna., supra, that 'a policyholder need not do a vain thing, nor is he to be prejudiced for failure to observe a technicality, the performance of which would be useless.' See: Hughes v. Central Acc. Ins. Co., 222 Pa. 462 [71 A. 923] ; Janney v. Scranton Life Ins. Co., 315 Pa. 200 [173 A. 819] ; Umbras v. Prudential Ins. Co., 130 Pa. Superior Ct. 437 [198 A. 470]."

Judgment reversed and here entered for plaintiff.