No. 39,366

JOSEPHINE KOPKE, *Appellee*, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, *Appellant*.

(271 P. 2d 279)

Opinion filed June 12, 1954.

*Claude E. Chalfant,* of Hutchinson, argued the cause, and *Harold R. Branine* and *Fred C. Littooy,* both of Hutchinson, were with him on the briefs for the appellant.

*J. D. Fair,* of Wichita, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an action by the named beneficiary to recover on a group life insurance policy. Judgment was in favor of plaintiff, and defendant insurance company has appealed.

The evidence disclosed substantially the following facts:

In July 1943 defendant company issued its group life insurance policy covering employees of the Consolidated Flour Mills Company (hereinafter referred to as Consolidated). Among these employees was one Kopke, who was manager of Consolidated's elevator at Pawnee Rock, and the policy in question in the amount of $2,500 was issued to him. His wife, plaintiff herein, was named beneficiary.

In the latter part of 1949 Kopke became ill, was hospitalized, and shortly thereafter underwent surgery for a cancer of the stomach. Following the operation he resumed his work as manager of the elevator, but in the spring of 1950 his health began to deteriorate, and, while physically unable to do much work, he continued his employment in a supervisory capacity. From time to time he hired others to assist him. In May 1950 his physical condition became very serious and as a result he was able to be at the elevator very little of the time.

Certain alleged discrepancies and irregularities in connection with the operation of the elevator having been called to Consolidated's attention, the general manager and an accountant in the home office at Wichita went to Pawnee Rock in June 1950 to make an investigation. As a result of this investigation irregularities with respect to the storage of grain and issuance of scale tickets were discovered. During the month of June Kopke was bedfast most of the time, and he was not at the elevator at any time after June 26th. He had been paid his salary every two weeks by Consolidated, and the last payment made was for the period ending June 15th.

He was not paid his salary for the second half of June because in the opinion of Consolidated's officials the shortages discovered exceeded the amount of his salary for that period. These shortages and irregularities subsequently resulted in a payment by Kopke's bonding company to Consolidated of approximately $7,000.

On July 24, 1950, Consolidated notified defendant insurance company in writing as follows:

"The insurance on the lives of the following individuals is to terminate as indicated in accordance with the terms of the Group Policies listed above because of termination of employment. None of these coverages are being terminated at the individual's own request or on account of physical disability unless so stated."

This notice then listed Kopke's name, the certificate number of his policy, the location of his employment, and stated the date of cancellation to be July 1, 1950, and gave as the reason, "Discharged."

Some seven months later, on January 30, 1951, Mr. Kopke died as a result of his illness. Proof of claim was duly made by his widow as beneficiary under the policy, and, liability being denied, this action was filed.

The petition, after formal allegations, alleged:

"4. That the deceased Otto J. Kopke duly fulfilled all the conditions of said insurance policy on his part during his lifetime and as consideration of his employment the Consolidated Flour Mills Company did make all payments of premiums as they became due on said certificate and policy and that the same were in full force and effect at the time the said Otto J. Kopke became permanently and totally disabled, which was on or before June 27, 1950, and the plaintiff alleges that the said Otto J. Kopke remained permanently and totally disabled till the time of his death on January 30, 1951."

A copy of the certificate of insurance was attached to the petition as an exhibit, and portions of it, material for our purposes, are as follow:

### "TERMINATION OF INSURANCE

"The insurance of the Employee under the Group Policy will cease automatically on the earliest of the following dates:

( a ) the date of termination of employment of the Employee, which shall be the date the Employee ceased active work. However, in case the Employee ceases active work due to sickness, injury, retirement, leave of absence, or temporary layoff, employment will be deemed to continue thereafter, for the purposes of insurance hereunder, until terminated by the Employer either by written notice to the Company, or by any other means; provided that in the event of leave of absence or temporary layoff, employment shall in no case be deemed to continue beyond the limited period specified in the Group Policy; and provided further that in any event employment will be deemed

to terminate on the date the Employee entered into the military or naval or air forces of any country at war, whether such war be declared or undeclared; (b) the date of expiration of the Group Policy.

"EXTENSION OF DEATH BENEFIT IN
THE EVENT OF TOTAL DISABILITY

"If due proof is furnished to the Company on its prescribed forms that the employment of the Employee terminated with the Employer on account of total disability from bodily injury or disease, which prevented the Employee from engaging in any business or occupation and from performing any work for compensation or profit and that such disability was continuous until the death of the Employee and that such death occurred before the Employee attained age 65 and while the Group Policy is in full force and within a period dating from such termination of employment not longer than the time the Employee's insurance had been in force at the date of such termination of employment, but in no event longer than twelve months; then the amount of insurance on the life of the Employee at the date of termination of employment will be paid to the beneficiary, provided said proof is furnished to the Company at its Home Office within ninety days of the death of the Employee."

These are followed by provisions concerning a "Conversion Privilege," but inasmuch as such privilege was not exercised by the insured they are not set out.

Defendant insurance company filed a motion to make the petition more definite and certain by requiring plaintiff to allege (1) whether Kopke was an employee of Consolidated at the time of his death on January 30, 1951, (2) that if he was not an employee of Consolidated on the date of his death to state the date of termination of his employment, and (3) if employment was terminated prior to death to state the cause of termination of such employment by Consolidated.

This motion to make more definite and certain was denied, whereupon defendant demurred on the ground the petition failed to state facts sufficient to constitute a cause of action. The demurrer was overruled.

Defendant then filed its answer, and that pleading, as amended, alleged that Kopke was not an employee of Consolidated at the time of his death; that on or about July 24, 1950, Consolidated mailed to defendant a notice that it had discharged and terminated Kopke's employment on July 1, 1950, and that the employment was not terminated on account of total disability but was terminated for cause and on account of suspected irregularities in the handling of accounts and records of the elevator.

Upon the issues thus joined the parties proceeded to trial by the

court. It was stipulated that the premiums necessary to keep the group life insurance policy in full force and effect were paid by Consolidated for the years ending June 30, 1950, and June 30, 1951, and that on or about July 24, 1950, Consolidated mailed to defendant the notice that it had discharged and terminated Kopke's employment on July 1, 1950.

After hearing the evidence, which was substantially as heretofore related, the court made findings of fact and conclusions of law. Several of the findings are as follow:

"3. That the said Otto J. Kopke became ill in December, 1949, and was operated for a cancer of the stomach at Halstead, Kansas; that following such operation he continued in his employment performing his duties as manager with said Flour Mills Company until the latter part of May, 1950, when he became permanently and totally disabled, and on June 26, 1950, he was hospitalized at Great Bend, Kansas, and was thereafter bedfast at the hospital or at his home until his death on January 30, 1951.

"4. That the said Flour Mills Company considered the said Otto J. Kopke as being in their employment up to and including July 1, 1950; that the said Flour Mills Company sent a notice of termination of insurance to this defendant showing the said Otto J. Kopke discharged as of July 1, 1950, and that no notice of any kind of discharge was given to the said Otto J. Kopke.

. . . . . . . . . . . . . . . . .

"6. That the insured, Otto J. Kopke, did become permanently and totally disabled while in the employ of the said Flour Mills Company and while said certificate and policy were in force and effect; that such disability was continuous until his death on January 30, 1951; that such death occurred before the said Otto J. Kopke attained the age of 65; while said group policy was in full force and effect and within a period dating from such termination of employment by total disability and within less than 12 months from the termination of said employment; that the period of employment qualified and kept in force said extension of benefits for a period of not to exceed 12 months.

"7. That certain evidence was introduced by the defendant to show the employer discharged Otto J. Kopke by sending notice of termination to the insurance carrier on or about July 24, 1950, and after the said Otto J. Kopke had become totally disabled, and certain evidence was offered to show that this was done on account of suspected irregularities in the account of said Otto J. Kopke all of which evidence was objected to by the plaintiff; however, no evidence was introduced showing any fraud on behalf of the said Otto J. Kopke, or that he received any personal gain from any such transaction."

Two of the court's conclusions of law are:

"The Court finds that the employment of Otto J. Kopke, now deceased, terminated with the Consolidated Flour Mills Company at the time he became permanently and totally disabled in May, 1950.

"2. That at the time said Otto J. Kopke became permanently and totally disabled, Group Policy No. 1954-G and Certificate No. 34, issued to Otto

J. Kopke, naming Josephine Kopke as beneficiary, were in full force and effect and the rights of the parties became fixed and vested under said policy and certificate."

Judgment was accordingly entered in favor of plaintiff in the amount of $2,500, together with interest, and for costs.

Defendant filed a motion to set aside findings number 3 and 7 for the reason that they are not supported by the evidence.

It also moved to set aside the conclusions of law on the ground they are erroneous and are not supported by the evidence and by the findings of fact.

Defendant also moved the court to make additional findings, the substance of such proposed additional findings having to do with the authority of Kopke in the performance of his duties as manager of the elevator; the alleged irregularities and defalcations uncovered by the investigation; that as a result of such investigation his employment was terminated and he was discharged on July 1, 1950; that his bonding company thereafter paid to Consolidated approximately $7,000 on account of such defalcations; that he was paid his regular salary by Consolidated during his illness from the latter part of 1949 and until June 15, 1950; that prior to July 1, 1950, Consolidated had paid the regular salaries of disabled employees, and would have continued Kopke in its employ until his death had it not been for the irregularities and defalcations discovered in the investigation, and that Kopke was not an employee of Consolidated at the time of his death on January 30, 1951.

Defendant sought these additional findings on the ground those made by the court did not completely cover the questions of fact and issues involved, and for the further reason that the findings so made did not set forth the reason for the termination of Kopke's employment.

All of these post-trial motions, including a motion for new trial, being overruled, defendant has appealed.

Defendant contends the court erred in a number of particulars, but in view of the principal and controlling issue involved they may be discussed together. The main thread of defendant's argument is that in order for plaintiff to recover it must be pleaded and established that (1) Kopke was an employee of Consolidated at the time of his death, or (2) his employment had been terminated by Consolidated "on account of total disability" and that death occurred within twelve months thereafter, or (3) Kopke had con-

verted the certificate of insurance within thirty-one days after the termination of his employment.

It is conceded that he was not an employee of Consolidated at the time of his death; that his death occurred within twelve months from the date of termination of his employment, and that he had not converted the certificate of insurance to an individual policy.

Defendant therefore argues that under the undisputed facts and the provisions of the policy recovery may be had only in the event Kopke's employment was terminated because of total disability due to illness, and in this connection our attention is directed to certain remarks and comment by the trial court at the time the post-trial motions were heard and overruled. From these remarks there is no doubt but that the court recognized the fact that Kopke's "discharge" was brought about due to the alleged irregularities in the management of the elevator.

It is equally clear, however, that the theory upon which the court tried and decided the case was that the reason for termination of employment was immaterial if *prior* to such termination Kopke had become totally disabled, in other words, if disability occurred while the relationship of employer and employee existed, then the position and rights of the parties with respect to the certificate of insurance became fixed.

From the record before us there is no question but that Kopke was totally disabled due to illness as early as June 26, 1950, and probably prior thereto, and that such disability continued until his death.

The question therefore narrows down to whether the subsequent action by the employer in "discharging" Kopke as of July 1, 1950, bars recovery under the policy, or whether the rights of the parties became "fixed" upon his becoming totally disabled while still in the status of an employee.

As before stated, defendant contends the risk assumed by it is where the employment is terminated *on account of total disability* and not *when* the employee is under disability, and that if recovery is allowed it will be due to the fact Kopke was able to conceal the irregularities for a long period of time and thereby prevent an earlier termination of his employment.

A careful examination of the provisions of the policy as applied to the facts convinces us that defendant's contentions are too "strained" and should not be sustained. Notwithstanding the trial

court's comment to the effect the employment undoubtedly was "terminated" because of the irregularities, the fact remains that Kopke became totally disabled *prior* to such termination, and we think there is a sound basis for the conclusion that the rights of the parties became fixed upon the occurrence of such disability. To hold otherwise would place in the hands of an employer the power arbitrarily to defeat and extinguish vested rights in such a situation merely by notifying the insurance carrier that a former employee, who had become totally disabled, had been fired or discharged due to dishonesty, unsatisfactory service, or for any other reason. We think it cannot safely be said that any such result was ever intended by the parties, or that in equity and fairness such should be the law.

No decision in point from this state has been cited, and our limited research has failed to disclose any directly bearing on the question. Among the various decisions from other jurisdictions, most of which are not directly in point due to different factual situations and provisions of the policies in question, we are impressed by what was held in *Armstrong v. John Hancock Mut. Life Ins. Co.*, 164 Pa. Super. 507, and reported at 66 A. 2d 468. In that case the provisions of the policy were substantially identical to the provisions of the policy before us. The insured died thirteen days after the termination of his employment. His beneficiary contended that his employment was terminated on account of his total disability due to illness. The company contended that it had been terminated due to unsatisfactory work. The jury found that employment had been terminated due to total disability and allowed recovery. The trial court granted the company's motion for judgment notwithstanding the verdict, from which ruling the beneficiary appealed. In reversing the decision of the trial court, the Pennsylvania appellate court held:

"The only reasonable construction to be placed upon the clause is that it was intended to protect any employee who was totally and permanently disabled when his employment was terminated, whether by resignation or discharge, and any doubt as to the intention must be resolved in favor of the insured and against the insurer. 'A contract of insurance will, if possible, be so construed as to protect the insured and doubts, if any, will be resolved in his favor': MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 218, 155 A. 491, 492, 77 A.L.R. 353. Furthermore, if the insured was totally disabled at the time of the termination of his employment for whatever cause, his right to continued protection under the policy became vested. Turley v. John Hancock Mutual Life Insurance Co., 315 Pa. 245, 173 A. 163." (p. 470.)

Defendant argues the instant case is distinguishable from that case in that in the latter the jury specifically found that the termination of employment was due to total disability, whereas in the case before us, the court, while not specifically finding the cause of termination, clearly indicated that it was due to the alleged irregularities. However, the decision in the cited case makes it clear that the test of liability under such language in a policy is whether the insured is totally disabled at the time of the termination of employment, rather than the cause or reason for such termination.

And so here. It is undisputed that the insured was totally disabled at the time his employment was terminated, even under defendant's own theory and evidence. Upon the happening of total disability, while still an employee, his rights under the policy thus became vested, irrespective of the reason for his subsequent discharge, and of course passed to his beneficiary, the plaintiff herein.

Careful consideration convinces us that the trial court reached a proper decision in this case, and the judgment is therefore affirmed.

Price, J. (dissenting): I am unable to concur in the decision reached in this case, and will state my reasons very briefly.

As I view the matter, recovery may be had only in the event of any one of the three following contingencies:

The first is that the insured was an employee of Consolidated at the time of his death. It is not even contended that he was, and in fact—he was not.

The second is that the insured had converted his certificate into an individual policy within thirty-one days after the termination of his employment. Under the provisions of the policy he had this privilege, without evidence of insurability, and irrespective of the cause or reason for the termination of his employment. It is not contended that he exercised this privilege, and in fact—he did not.

The third is that insured's employment terminated on account of total disability; that such disability was continuous until his death within twelve months thereafter, and that he had not then attained the age of sixty-five years. It is conceded that such disability continued until his death, within the period provided, and that he had not reached age sixty-five.

Not being an employee at the time of his death, and not having converted the policy—it seems to me that all rights thereunder are governed exclusively by the provision with respect to "EXTENSION OF DEATH BENEFIT IN THE EVENT OF TOTAL DIS-

ABILITY," which is quoted in the court's opinion. This, in simple language, provides that if due proof is furnished that employment terminated "on account of total disability . . ." then the remaining provisions relating to extension of death benefits become operative.

I concede that insured was totally disabled when his employment was terminated, but to me that is not the decisive and controlling factor. I think the record is clear as to the reason for the termination of employment, and it was not because of total disability.

For the reasons stated I would feel compelled to reverse rather than affirm.